**Otto POLLNOW, William Pollnow and Geraldine Pollnow, Plaintiffs,**

v.

**John E. GLENNON, etc., Board of Education, Millbrook Central School District, Millbrook, New York, Defendants.**

No. 81 Civ. 7444 (RO).

United States District Court,
S.D. New York.

Aug. 3, 1984.

· Richard B. Wolf, Poughkeepsie, N.Y., for plaintiffs.

David Shaw, Poughkeepsie, N.Y., for defendants; David S. Shaw and George Shebitz, Poughkeepsie, N.Y., of counsel.

## OPINION AND ORDER

OWEN, District Judge.

This is a civil rights action by Otto Pollnow and his parents against various officers of the Millbrook, New York school system including the Superintendent and the Board of Education. It is before me on cross-motions for summary judgment.

On April 22, 1981, during school vacation, Otto Pollnow, a sixteen year old student and a member of the football team at Millbrook High School, was arrested and charged with seriously assaulting and attempting to stab one Adeline Wormell, the mother of one of his high school friends. The assault occurred at Mrs. Wormell's home and left bruises on her body and arms and a cut on her nose. On April 27, upon the resumption of school, as Otto stepped off the school bus he was met by John Glennon, the school superintendent, and Raymond White, administrative assistant to Millbrook High's principal. Otto went with Glennon and White to Glennon's office where they questioned him about the alleged assault. According to Glennon's later testimony,

> I said to Otto I understand that you were in some trouble last Wednesday. Otto said, "Yes." I said, "What happened?" Otto said that he had gone to a pot party at the Tribute Garden. He said he was smoking marijuana and he did not know it but someone laced his marijuana with Angel Dust. He said that he went over to the Wormell's home and then he went crazy. I said, "Was anyone hurt?" He said, "Yes, Mrs. Wormell." He said, "I hurt her—I hit her and hurt her."

Glennon thereupon suspended Otto from school for five days under Education Law § 3214.

The next day, Glennon informed Otto's parents by letter that he had scheduled for May 1 a disciplinary hearing pursuant to New York State Education Law § 3214 to evaluate "allegations of conduct that endanger the health, safety and welfare of students." Otto and his parents came to the hearing (hereafter sometimes referred to as "the first hearing") but protested to the hearing officer that the notice of hearing did not specify the charges against Otto.[1] They also stated that they would not participate in any hearing until the criminal charges then pending against Otto were resolved. Notwithstanding this protest, the hearing was held and the hearing officer recommended that Otto be suspended indefinitely, which recommendation Glennon adopted.[2]

---

1. A general notice of a disciplinary hearing has been held sufficient when a student receives notice of specific charges by other means. *Matter of Dwaileebe,* 17 Ed.Dept.Rep. 308 (1978).

2. The reasonableness of Glennon's assessment of the situation and consequent concern was given support by events eight months later when Otto, in separate incidents, assaulted one student and choked another—and was suspended following a hearing. This suspension was sustained upon review by the New York State Com-

Apparently concerned with the Pollnows' claim of failure to give formal notice of the charges, Glennon set up a new hearing (hereafter sometimes called "the second hearing"), this time specifying in the notice that the hearing would investigate the assault on Mrs. Wormell. In the interim, however, the Pollnows appealed from the first hearing to the New York State Commissioner of Education requesting 1) a stay of further proceedings until the pending criminal charges were resolved, and 2) Otto's immediate reinstatement to his classes.

Having not received a response from the Commissioner by the adjourned date of the second hearing, May 26, the Pollnows and their attorney attended the hearing—held before a different hearing officer—reiterated their protest that Otto's participation in any hearing before his criminal trial was concluded would prejudice his right against self-incrimination, and departed. Once again, despite plaintiffs' refusal to participate, the hearing proceeded to a conclusion. This time additional details of the assault, including photographs of Mrs. Wormell's numerous and serious injuries, were put in evidence. On the evidence the hearing officer recommended that Otto be suspended for the balance of the 1980–1 school year

and the first semester of 1981–2. Glennon adopted the recommendation and, on June 8, notified the Pollnows accordingly.

Following all of this, on June 15, 1981, the Commissioner of Education issued an "Interim Order" on the Pollnow's appeal from the first hearing. That opinion, in relevant part, reads as follows:

Petitioners appeal from the April 27, 1981 suspension of their son from attendance at school for allegedly assaulting an individual in her home. They request an immediate order permitting the student to continue to attend classes in the Millbrook Central School District pending the outcome of the disciplinary hearing until such time as criminal proceedings regarding the alleged assault are disposed of .... [A]pparently recognizing that the [April 27th] hearing may have been procedurally defective respondent has given notice to petitioners that a new disciplinary hearing will now be held on charges based on the alleged assault.

\* \* \* \* \* \*

Upon a review of the papers before me, it does not appear that this student's presence in respondent's classrooms will pose a hazard to any student or facility member, or any risk of disruption to the learning process. Consequently, the stu-

missioner of Education in an opinion, No. 11064, reading in part:

Petitioners contend that respondent has improperly attempted to punish their son for conduct which occurred away from school and was unrelated to any school activity ...

The statutory authority by which a board of education or superintendent of schools may suspend a student is found in Section 3214 of the Education Law. That section provides in relevant part that the board of education and the superintendent of schools may suspend a pupil who is "insubordinate or disorderly or whose conduct otherwise endangers the safety, morals, health or welfare of others." Respondent contends that the alleged assaults committed by petitioners' son, although occurring off school grounds at a time when school was not in session, constitute conduct which warrants his suspension under the above cited statute, and relies upon *Matter of Rodriguez*, 8 Ed.Dept.Rep. 214. As stated in that decision, at page 216:

It is the duty of the school authorities to insure the protection of the education system

of which they have charge. To carry out this duty, they have been given the power to discipline those students who, due to their conduct or their physical or mental condition, are disrupting the educative process or are endangering the health, safety or morals of themselves or of other minors.

Whether discipline is to be meted out to such students, and the measure thereof, is *within the discretion of the school authorities.* The mere fact that such conduct occurs or such condition exists outside the school situation or the school official-pupil relationship does not preclude the possibility that such *conduct or condition may adversely affect the* educative process or endanger the health, safety or morals of pupils within the education system for which the school authorities are responsible. The school authorities are in the best position to determine whether the education system for which they are responsible has been or could be so effected, and their determination will not be upset absent some showing that they have abused their discretion in making it.

dent must be allowed to attend his regular classes pending respondent's determination following a hearing.

As I have held in the past, in order to preserve his right against self-incrimination, a student may request an adjournment of a disciplinary hearing pending the disposition of criminal charges against him. (*Matter of Wilkins*, 19 Ed. Dept.Rep. 190; see, also, *Matter of Jackson*, 19 Ed.Dept.Rep. 470.) Based upon my review of the facts of this case and in the interests of justice, petitioners' request for such an adjournment should be granted and continuation of the section 3214 proceeding should be stayed, pending conclusion of the criminal matter.

IT IS ORDERED that the Board of Education of the Millbrook Central School District immediately reinstate petitioners' son to regular classroom attendance, pending completion of disciplinary proceedings against the student, and

IT IS FURTHER ORDERED that further proceedings pursuant to Education Law section 3214 be stayed pending the disposition by the court of the criminal charges brought as a result of the alleged assault.

Both Glennon and, subsequently, the Millbrook Board of Education interpreted the Interim Order as having no effect on the second hearing—which had been completed well before June 15—and therefore disregarded it.

Thereafter, the summer passed and, beginning in mid-August, Otto participated in high school football practice. On September 4, this participation was halted by a letter from Glennon, asserting that, as adjudicated at the May 26 hearing, Otto's suspension was still in effect. Thereafter, the Pollnows appealed to the Board of Education on the ground that, in light of the

Commissioner's June 15 order, Otto's continuing suspension was improper. The Board then met and unanimously upheld the suspension.

The Pollnows thereupon appealed further to the Commissioner of Education, essentially challenging the suspension following the second hearing. On October 30, the Commissioner issued a second opinion, which, after noting that the Board of Education had interpreted his June 15 order to have had no effect on the second hearing, directed, with apparent irritation, that Otto be immediately reinstated to classroom attendance,[3] which occurred on November 4, 1981.

In their complaint, the Pollnows allege and seek actual and punitive damages against Glennon, the members of the Millbrook Board of Education and others, all in their individual capacities, for the five-month period they claim Otto was wrongfully suspended from school.[4] In support of this, plaintiffs assert a variety of claims, pursuant to 42 U.S.C. § 1983, which makes liable:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

■ It is well established that a student has a constitutionally protected property interest in public education, which may be taken from him only after notice and opportunity for a hearing. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1974). To this end, New York Education Law § 3214(3)(c) provides:

---

**3.** The opinion observed that "Education Law § 3214(3) ... is not meant to empower school officials to punish students for actions which have no connection with their school, as I find respondent has done in this instance." But see, *Matter of Rodriguez*, 8 E.Dept.Rep. 214, quoted at fn. 2, *supra*.

**4.** $15,000 actual and $75,000 punitive damages are sought against Glennon individually, and $10,000 actual and $20,000 punitive damages against each member of the Board of Education individually.

No pupil may be suspended for a period in excess of five school days unless such pupil and the person in parental relation to such pupil shall have had an opportunity for a fair hearing, upon reasonable notice, at which such pupil shall have the right of representation by counsel, with the right to question witnesses against such pupil and to present witnesses and other evidence on his behalf.

Under New York Law, should a student be suspended by the school superintendent, the superintendent may conduct the "fair hearing" himself, or may appoint a hearing officer to do so. The report of the hearing officer is advisory only, and the student may appeal the superintendent's decision to the Board of Education, and may then appeal the Board's decision to the Commissioner of Education. *N.Y. Education Law,* §§ 310, 3214(3)(c).

■ A number of plaintiffs' claims need but scant consideration. The first is that Otto's April 27 interrogation by Glennon was improper because Otto was not advised that he could call his parents before discussing the incident. There is, however, no requirement for any sort of *"Miranda"* type warning in such informal, non-custodial discussions. *Matter of Brendan H.,* 82 Misc.2d 1077, 372 N.Y.S.2d 473 (1975).

■ Plaintiffs' next claim is that charges of off-campus, non-school-related conduct are insufficient bases for suspension from school. The law is to the contrary, see *Matter of Rodriguez,* 8 Ed.Dept.Rep. 214, quoted in part in fn. 2, *supra.*

■ Finally, as to the Pollnow's claim of impropriety in holding a § 3214 hearing while criminal charges involving the same conduct are pending, the Courts have long held this to be permissible. *Matter of Manigaulte,* 63 Misc.2d 765, 313 N.Y.S.2d 322 (1970), and *Matter of Johnson v. Board of Education,* 62 Misc.2d 929, 310

N.Y.S.2d 429 (1970), where the Court stated at p. 933, 310 N.Y.S.2d 429:

[I]f the petitioners' contentions were carried to their logical conclusion, it would result in the absurd situation wherein a student who violated a rule or regulation short of the. commission of a crime could be suspended after a hearing for a period greater than five days, while one who committed a serious crime on school property, be it assault, arson, attempted murder, etc., could not be suspended for more than five days and would be entitled to attend school until there was a disposition of the criminal charges. Such a situation cannot be condoned ...

■ The final issue raised in the complaint is whether or not Superintendent Glennon and the members of the Millbrook Board of Education [5] are to be subjected to a trial with all its expense and the risk of personal liability for failure to reinstate Otto upon receipt of the Commissioner's Interim Order in June, see p. 6, supra, for extensive quotation therefrom. It is the Pollnows' position that the June Interim Order was so clear that the failure of the school officials to immediately reinstate Otto was "in bad faith, malicious ... and in deliberate disregard of law." [6] The school officials, on the other hand, took the position at the time and take the position today that the June order had no effect upon the second hearing, which had been conducted in accordance with established law and completely concluded by the time that Interim Order was issued, and therefore assert their absence of bad faith.[7]

This issue is appropriately resolved by the application of the holding in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). There, at fn. 29 on p. 817, 102 S.Ct. at fn. 29 on p. 2738, the Court communicated a concrete recognition of the problem by its quotation from Judge Gesell's concurrence in *Halperin v. Kis-*

---

5. And other less prominently featured figures in the school system.

6. Complaint, p. 1.

7. As to all other issues raised by the Pollnows, Glennon and the Board were clearly acting within established law, see pp. 12–14 supra.

*singer,* 196 U.S.App.D.C. 285, 307, 606 F.2d 1192, 1214 (1979), *aff'd* in pertinent part by an equally divided Court, 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981):

> We should not close our eyes to the fact that with increasing frequency in this jurisdiction and throughout the country plaintiffs are filing suits seeking damage awards against high government officials in their personal capacities based on alleged constitutional torts ... It is not difficult for ingenious plaintiff's counsel to create a material issue of fact on some element of the immunity defense where subtle questions of constitutional law and a decision maker's mental processes are involved .... The effect of this development upon the willingness of individuals to serve their country is obvious.

Having so observed, the Court's holding was as follows:

> [W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broadreaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See *Procunier v. Navarette,* 434 U.S. 555, 565 [98 S.Ct. 855, 861, 55 L.Ed.2d 24] (1978); *Wood v. Strickland,* 420 U.S. [308] at 322 [95 S.Ct. 992 at 1001, 43 L.Ed.2d 214 (1975) ].

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether the law was clearly established at the time an action occurred. If the law at that time was not clearly established ... [a government official could

not] fairly be said to "know" that the law forbade conduct not previously identified as unlawful. (footnotes omitted). 457 U.S. at 817, 102 S.Ct. at 2738–2739.

In the light of this, the simple question, as I perceive it, is whether Glennon and the individual members of the Millbrook Board of Education are chargeable with a violation of Otto's constitutional rights by reason of their conclusion that the Commissioner's Interim Order had no effect on the second hearing upon which Otto's suspension was based. I conclude that as a matter of summary judgment they are not so chargeable. The Commissioner's Interim Order was on an appeal from the first hearing and spoke but prospectively as to staying any further hearing. The Superintendent and the Board obviously knew that the second hearing—which the order speaks of staying—had already been held and completed pursuant to established law when this order issued, *Matter of Rodriguez,* supra, *Matter of Manigualte,* 63 Misc.2d 765, 313 N.Y.S.2d 322 (1970). Furthermore, at the second hearing, evidence was adduced which had not been before the Commissioner when he issued his Interim Order, which was, "based on [his] review of the facts of this case and in the interest of justice." I conclude that the defendants are not, on an objective viewing of these facts, to be stripped of their qualified immunity from liability for Otto's continued suspension by their failure to give effect to an order that could be viewed as moot, even though one could also quite reasonably read the Commissioner's Interim Opinion as expressing his determination that Otto should be reinstated regardless of whether the second hearing had been held and concluded or not. *Harlow* and *Wood,* supra, require more than reasonable alternative readings before immunity is lost and personal liability attaches.

Accordingly, the defendants' motion for summary judgment is granted and plaintiffs' cross-motion for summary judgment is denied.

Submit order and judgment on notice.