Otto POLLNOW, William Pollnow and Geraldine Pollnow, Plaintiffs-Appellants,

v.

John E. GLENNON, David M. Park, Phyllis Murray, John Parisi, James Ashton, Joan Bender, Robert Brenker, Gary Moody, Linda Zinsmeyer, Owen Hill, Adelaide Adams, Board of Education, Millbrook Central School District, Millbrook, N.Y. 12545, Defendants-Appellees.

No. 719, Docket 84–7859.

United States Court of Appeals, Second Circuit.

Argued Feb. 11, 1985.

Decided March 12, 1985.

Richard B. Wolf, Poughkeepsie, N.Y., for plaintiffs-appellants.

David S. Shaw, Poughkeepsie, N.Y., for defendants-appellees.

Before FEINBERG, Chief Judge, TIMBERS and CARDAMONE, Circuit Judges.

TIMBERS, Circuit Judge:

The central question presented on this appeal is whether the district court, Richard Owen, *District Judge*, 594 F.Supp. 220 (S.D.N.Y.1984), in granting summary judgment in favor of defendant officials of the

Millbrook (N.Y.) school system, including the school superintendent, properly held that they as state officials were entitled to qualified immunity in this civil rights action brought pursuant to 42 U.S.C. § 1983 (1982). We affirm.

## I.

We assume familiarity with the district court's opinion and its full statement of the facts. We shall summarize here only those facts believed necessary to an understanding of our rulings on the legal issues raised on appeal.

On April 22, 1981,[1] Otto Pollnow, then sixteen years old and a student at Millbrook High School, was arrested and charged with assaulting and attempting to stab Adeline Wormell, the mother of one of his teenage friends. The assault occurred at Mrs. Wormell's home during a school vacation. Classes resumed on April 27. When Otto arrived at school, he was met by John Glennon, the school superintendent, and Raymond White, administrative assistant to the principal of Millbrook High School. The three went to Glennon's office where Glennon and White questioned Otto about the alleged assault. Glennon later testified that, during the conversation, Otto admitted the attack and stated that it was brought about by his having smoked marijuana that had been laced, unbeknown to him, with "Angel Dust", a type of hallucinogen. Glennon suspended Otto from class for five days as authorized by New York Education Law § 3214 (McKinney 1981).[2]

---

1. All events in this summary, preceding the commencement of the instant action, occurred during 1981.

2. New York Education Law § 3214 (McKinney 1981) in relevant part provides:
   "§ 3214. School for delinquents
   . . . .
   3. Suspension of a pupil. a. The board of education, board of trustees or sole trustee, the superintendent of schools or district superintendent of schools may suspend the following pupils from required attendance upon instruction:
   (1) A pupil who is insubordinate or disorderly, or whose conduct otherwise endangers the safety, morals, health or welfare of others;
   (2) A pupil whose physical or mental condition endangers the health, safety, or morals of himself or of other pupils;
   . . . .
   b. The board of education, board of trustees, or sole trustee may adopt by-laws delegating to the principal of the district, or the principal of the school where the pupil attends, the power to suspend a pupil for a period not to exceed five school days.
   c. No pupil may be suspended for a period in excess of five school days unless such pupil and the person in parental relation to such pupil shall have had an opportunity for a fair hearing, upon reasonable notice, at which such pupil shall have the right of representation by counsel, with the right to question witnesses against such pupil and to present witnesses and other evidence on his behalf. Where a pupil has been suspended in accordance with this section by a superintendent of schools, district superintendent of schools or community superintendent, the superintendent shall personally hear and determine the proceeding or may, in his discretion, designate a hearing officer to conduct the hearing. The hearing officer shall be authorized to administer oaths and to issue subpoenas in conjunction with the proceeding before him. A record of the hearing shall be maintained, but no stenographic transcript shall be required and a tape recording shall be deemed a satisfactory record. The hearing officer shall make findings of fact and recommendations as to the appropriate measure of discipline to the superintendent. The report of the hearing officer shall be advisory only, and the superintendent may accept all or any part thereof. An appeal will lie from the decision of the superintendent to the board of education who shall make its decision solely upon the record before it. The board may adopt in whole or in part the decision of the superintendent of schools.
   Where a pupil has been suspended in accordance with this section by a board of education, the board may in its discretion hear and determine the proceeding or appoint a hearing officer who shall have the same powers and duties with respect to the board that a hearing officer has with respect to a superintendent where the suspension was ordered by him. The findings and recommendations of the hearing officer conducting the proceeding shall be advisory and subject to final action by the board of education, each member of which shall before voting review the testimony and acquaint himself with the evidence in the case. The board may reject, confirm or modify the conclusions of the hearing officer."

Glennon then notified Otto's parents by mail that a disciplinary hearing was scheduled for May 1, and that the hearing was intended to evaluate "allegations of conduct that endanger the health, safety and welfare of students." Otto and his parents attended the hearing, at which the hearing officer recommended that Otto be suspended indefinitely. Glennon adopted the recommendation.

Otto's parents protested at the hearing that they had received insufficient notice of the charges against Otto. Glennon became concerned and scheduled a second hearing for May 26. This time the notice of hearing specified that the assault on Mrs. Wormell would be the subject of the investigation. The Pollnows, meanwhile, had appealed to the New York State Commissioner of Education the determination made at the first hearing and requested a stay of proceedings until the criminal charges against Otto were resolved. They also requested that Otto be reinstated to class attendance in the interim.

The May 26 hearing was held as scheduled and before a different hearing officer. The Pollnows and their attorney attended but stayed just long enough to protest that

Otto's participation jeopardized his privilege against self-incrimination and then they departed. The hearing proceeded in their absence. Proof of Mrs. Wormell's serious injuries was put into evidence. At the conclusion, the hearing officer recommended that Otto be suspended for the balance of that academic year and the first semester of the next. Glennon adopted this recommendation and notified the Pollnows accordingly on June 8. No appeal was taken from this second determination.

On June 15, the Commissioner of Education issued an "Interim Order" [3] on the appeal from the first hearing. Apparently unaware that the second hearing already had taken place, the Commissioner granted the Pollnows' request for a stay of the § 3214 proceedings pending disposition of the criminal prosecution and ordered that Otto be reinstated to class attendance pending completion of the disciplinary proceedings. Otto was not reinstated, however, because Glennon considered the Interim Order to be moot.

The following August Otto participated in football practice at Millbrook High School. He continued to do so until September 4 when Glennon asserted in a letter

3. The June 15 "Interim Order" of the Commissioner in relevant part states:
    "Petitioners appeal from the April 27, 1981 suspension of their son from attendance at school for allegedly assaulting an individual in her home. They request an immediate order permitting the student to continue to attend classes in the Millbrook Central School District pending the outcome of a hearing ... until such time as criminal proceedings regarding the alleged assault are disposed of....
    [A]pparently recognizing that the [April 27th] hearing may have been procedurally defective, respondent has given notice to petitioners that a new disciplinary hearing will now be held on charges based on the alleged assault.
    ....
    Upon a review of the papers before me, it does not appear that this student's presence in respondent's classrooms will pose a hazard to any student or faculty member, or any risk of disruption to the learning process. Consequently, the student must be allowed to attend his regular classes pending respondent's determination following a hearing.

As I have held in the past, in order to preserve his right against self-incrimination, a student may request an adjournment of a disciplinary hearing pending the disposition of criminal charges against him. (*Matter of Wilkins,* 19 Ed.Dept.Rep. 190; see, also, *Matter of Jackson,* 19 Ed.Dept.Rep. 470.) Based upon my review of the facts of this case and in the interests of justice, petitioners' request for such an adjournment should be granted and continuation of the section 3214 proceeding should be stayed, pending conclusion of the criminal matter.
    IT IS ORDERED that the Board of Education of the Millbrook Central School District immediately reinstate petitioners' son to regular classroom attendance, pending completion of disciplinary proceedings against the student, and
    IT IS FURTHER ORDERED that further proceedings pursuant to Education Law section 3214 be stayed pending the disposition by the court of the criminal charges brought as a result of the alleged assault."

to Otto's parents that his suspension was still in effect. The Pollnows then appealed to the Board of Education on the basis of the Commissioner's Interim Order of June 15. The Board unanimously upheld Otto's continued suspension. The Pollnows then appealed the Board's ruling to the Commissioner who, on October 30, issued a second opinion and ordered Otto's immediate reinstatement. Otto was permitted to return to classes and did so on November 4.

On December 1, 1981, the Pollnows commenced this action in the district court pursuant to 42 U.S.C. § 1983 (1982), seeking $15,000 actual and $75,000 punitive damages against Glennon; $10,000 actual and $20,000 punitive damages against each member of the Board of Education individually; and $60,000 actual damages against the Board itself. Various motions were made and discovery proceedings took place during the next two and a half years.

On August 3, 1984, the court granted appellees' motion for summary judgment and denied appellants' motion for summary judgment. The court held that Otto was not entitled to a *Miranda* -type warning in the noncustodial context of his initial conversation with Glennon; that off-campus conduct is a proper basis for suspension under state law; and that a § 3214 hearing is permissible during the pendency of criminal charges involving the same conduct. 594 F.Supp. at 224. Finally, on the issue of Glennon's and the Board's failure to heed the Interim Order of the Commissioner, the court held that appellees acted in objective good faith and that their qualified immunity entitled them to summary judgment. *Id.* at 225.

**4.** Although appellants' counsel stated at oral argument that they still "press" all other claims raised in the district court, they have presented no argument—oral or written—in support of those claims before this Court. Finding no error in the district court's opinion with regard to those claims, we affirm in all respects.

Appellants also raise on appeal, for the first time, the claim that the Board of Education, as opposed to its individual members, is not entitled to any immunity. *See Owen v. City of Independence,* 445 U.S. 622, 657 (1980). Since that claim was not raised, briefed or argued in the district court, we decline to consider it here.

From the summary judgment in favor of appellees, this appeal has been taken.

## II.

The two issues presented for decision on this appeal, in order to resolve the essential question stated at the outset of this opinion, are (1) whether summary judgment is appropriate in determining the matter of qualified immunity and (2) whether the court erred in its holding that the officials in this case were entitled to such immunity. For the reasons which follow, we affirm the judgment of the district court.[4]

In *Wood v. Strickland,* 420 U.S. 308 (1975), the Supreme Court made clear that the scope of immunity afforded local school officials is very broad: "It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion.... The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members...." *Id.* at 326. The Court concluded that "[a] compensatory award will be appropriate only if [the school official] has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith." *Id.* at 322.

The *Wood* test, which had both subjective and objective prongs, was modified in *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), the subjective prong being discarded.[5] The

Moreover, we refuse to apply the "plain error" rule as to that claim, since appellants failed to plead, or to submit affidavits proving the independent liability of the Board, which is not liable under *respondeat superior* for the acts of its employees. *Monell v. Department of Social Services,* 436 U.S. 658, 691 (1978); *Walden v. Wishengrad,* 745 F.2d 149, 153 (2 Cir.1984).

**5.** Although *Harlow* involved the immunity afforded federal executive officials in a *Bivens* type action, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971), the same rule applies in § 1983 actions

*Harlow* test, which in effect broadens the immunity for state officials beyond that described in *Wood,* is whether the state official's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The stated purpose behind the adoption of the purely objective test was to prevent "insubstantial" claims from proceeding to trial by obviating the need for a jury determination on the issue of motive, and thus to protect state officials from the disruption caused by defending such suits. *Id.*

■ Appellants argue that summary judgment is inappropriate on the issue of qualified immunity in any case in which the complaint states more than "bare allegations of malice". *Harlow, supra,* 457 U.S. at 817. We disagree. The effect of *Harlow* is to permit summary judgment on the issue of qualified immunity in any case where the material facts are not in dispute. *Wyler v. United States,* 725 F.2d 156, 159–60 (2 Cir.1983). As indicated above, *Harlow* negates the need for extensive investigation into the subjective motives of state officials and permits summary judgment in actions in which the conduct itself and the surrounding circumstances are not in question. Our careful examination of the record satisfies us that there is no genuine issue as to material facts regarding such matters in the instant case.

### III.

■ We also agree with the district court that appellees were entitled to qualified immunity on the facts of the instant case. Contrary to the assertions by appellants, it is unnecessary for us to determine whether appellees violated any applicable state law. Clearly, a violation of state law is not cognizable under § 1983. *Davis v. Scherer,* 468 U.S. ——, ——, 104 S.Ct. 3012, 3019 (1984). Furthermore, such a violation, even if there were one, would not deprive a state official of qualified immunity from damages. *Id.*[6] Absent a violation of clearly established *constitutional* or *federal statutory rights* "of which a reasonable person would have known", *Harlow, supra,* 457 U.S. at 818, a school official cannot be held accountable for damages under § 1983. *Davis, supra,* 468 U.S. at ——, 104 S.Ct. at 3019–20; *Wood, supra,* 420 U.S. at 322. The record in the instant case is barren of any such violation.

■ While due process requires that government officials refrain from acting in an irrational, arbitrary or capricious manner, the failure to heed an order that is susceptible of reasonable alternative readings is not so irrational, arbitrary or capricious as to violate due process. More precisely, here the failure to heed such an order cannot be viewed as such a clear disregard of Otto Pollnow's right to due process as to demonstrate objective bad faith. *O'Hagan v. Soto,* 725 F.2d 878, 879 (2 Cir.1984) (per curiam). It must be remembered here that the Commissioner's Interim Order was based solely upon his reading of the facts adduced at the first hearing. It was not premised on any independent *constitutional* right[7] which might have entitled Otto to reinstatement. If the

against state officials. *Harlow, supra,* 457 U.S. at 818 n. 30.

6. In *Davis,* a § 1983 action was brought by a police officer who had been terminated from his employment without a pre-termination or prompt post-termination hearing. The district court in that case concluded that, although the right to such a hearing under the due process clause had not been clearly established at the time of the termination, the failure to follow established state regulations and procedures regarding terminations was "unreasonable" and deprived the officials of qualified immunity.

*Davis, supra,* 468 U.S. at ——, 104 S.Ct. at 3015–17. The Supreme Court reversed the judgment of the Eleventh Circuit which had affirmed the judgment of the district court. 710 F.2d 838.

7. The presence or absence of a sufficient evidentiary basis for Glennon's decision to suspend Otto is not a matter for federal court determination: "§ 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings" as long as there was *some* evidence supporting the charges. *Wood, supra,* 420 U.S. at 326.

**502**

Interim Order had been premised on a finding of such a violation, and if that violation had been called to the attention of the Board members and Glennon, the failure to reinstate Otto then would have been susceptible of an inference of absence of good faith necessary to hold them accountable under § 1983. Under those circumstances, absent some other corrective action in the interim, the order would not be susceptible of being read as moot.

Finally, appellants argue that the district court was required under *Migra v. Warren City School District*, 465 U.S. 75, 104 S.Ct. 892 (1984), to give "preclusive effect" to the findings contained in the October 30, 1981 order of the Commissioner because, according to appellants, those findings were "expressly approved and affirmed" by the New York courts in a subsequent Article 78 proceeding brought by the Board against the Commissioner. *Migra*, however, only "requires that federal courts afford prior state court proceedings the same preclusive effect in § 1983 actions that the state courts themselves would afford those proceedings." *Gargiul v. Tompkins*, 739 F.2d 34, 36 (2 Cir.1984). The issue decided by the state courts here was whether the Commissioner's second order was arbitrary, capricious or lacking a rational basis. That determination is irrelevant to the objective good faith of appellees at the time their action was taken. The district court properly disregarded the state court decision referred to.

Affirmed.