Joshua **MAHAFFEY**, a minor, by his parents, Greg **MAHAFFEY** and Kari **Mahaffey**, Plaintiff,

v.

Peni **ALDRICH**, in her capacity as Director of High School and Continuing Education Services, and the Board of Education of the Waterford School District, Defendants.

No. 02–CV–70829DT.

United States District Court, E.D. Michigan. Southern Division.

Nov. 26, 2002.

Richard J. Landau, Ann Arbor, MI, for plaintiff.

Michael D. Weaver, Bloomfield Hills, MI, for defendants.

## OPINION

DUGGAN, District Judge.

This action was filed by Greg and Kari Mahaffey representing their minor son, Joshua Mahaffey (Plaintiff). The action arises from Plaintiff being suspended from school by Defendants, Peni Aldrich (Aldrich) and the Board of Education of the Waterford School District (Waterford Board). Plaintiff's Complaint set forth the following causes of action: Count I) violation of Plaintiff's free speech rights under the First Amendment; Count II) violation of Plaintiff's due process rights under the Fourteenth Amendment; Count III) violation of Plaintiff's free expression rights under the Michigan Constitution; Count IV) violation of Plaintiff's due process rights under the Michigan Constitution; Count V) violation of Section 504 of the Rehabilitation Act of 1973; Count VI) violation of Title II of the Americans with Disabilities Act; Count VII) violation of Michigan's Persons with Disabilities Civil Rights Act; and Count VIII) violation of the Family Educational Rights and Privacy Act. The parties have filed motions for summary judgment. A hearing was held on the motions on October 17, 2002. For the reasons set forth below, Plaintiff's Motion shall be granted in part, and denied in part; and Defendants' Motion shall be granted, in part, and denied, in part.

## STANDARD

Summary judgment is proper only if there is no genuine issue as to any material fact, thereby entitling the moving party to judgment as a matter of law. *Hunter v. Caliber Sys., Inc.,* 220 F.3d 702, 709 (6th Cir.2000); *see also* FED. R. CIV. P. 56(c). There is no genuine issue of material fact for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could "return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, the moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to show that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994). The nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993).

## BACKGROUND

This case arises out of Defendants suspending Plaintiff from school after Defendants learned of a website to which Plaintiff had contributed. The website in question was created by another student in the Waterford schools. According to Plaintiff, this other student and Plaintiff created the website "for laughs," because they were bored and "wanted something to do." (Pl.'s Ex. H).

The website in question, entitled "Satan's web page," stated:

This site has no purpose. It is here to say what is cool, and what sucks. For example, Music is cool. School sucks. If you are reading this you probably

know me and Think Im [sic] evil, sick and twisted. Well, Some [sic] might call it evil. I like to call it— well evil I guess. so [sic] what? If you don't know me you will see. I hope you enjoy the page.

(Pl.'s Ex. F). The website then listed "people I wish would die," "people that are cool," "movies that rock," "music I hate," and "music that is cool." (*Id*). Near the bottom, the webpage stated:

SATAN'S MISSION FOR YOU THIS

WEEK: Stab someone for no reason then set them on fire throw them off of a cliff, watch them suffer and with their last breath, just before everything goes black, spit on their face. Killing people is wrong don't do It [sic]. unless [sic] Im [sic] there to watch. — Or just go to Detroit. Hell is right in the middle. Drop by and say hi.

PS: NOW THAT YOU'VE READ MY WEB PAGE PLEASE DON'T GO KILLING PEOPLE AND STUFF THEN BLAMING IT ON ME. OK?

(*Id*)(emphasis in original).

A parent of a Waterford Kettering High School (Kettering) student notified the police about the website.[1] The police then notified Kettering about the website. According to a police officer that interviewed Plaintiff, Plaintiff admitted to having contributed to the website and stated that Kettering computers "may have been used to create the website." (Defs.' Ex. Z). Kettering then "suspended Plaintiff for his contributions to the website." (Defs.' Mot. at ¶ 6).

Plaintiff's suspension began on August 28, 2001, after a meeting regarding the website was conducted at the Waterford Police Department. In a letter dated September 7, 2001, Carol Baldwin, the Princi-

pal of Kettering, notified Plaintiff's parents that she was recommending to Defendant Aldrich, the Director of High School & Continuing Education Services, that Plaintiff be expelled from the Waterford School District. (*See* Defs.' Ex. N). This letter stated that the expulsion recommendation was "based upon the admitted and alleged violation of Categories 5–Behavior Dangerous to Self and Others, 23–Internet Violations and 24–Intimidation and Threats of the Waterford School District Code of Conduct." (Defs.' Ex. N).

Aldrich then sent a letter, dated September 12, 2001, to Plaintiff's parents stating a hearing was set for September 20, 2001, "to review the facts of this case." (Defs.' Ex. P). The letter also stated:

You have the right to participate in this hearing. Joshua has the right to have counsel present, witnesses present, or other persons that may be selected for advice. At the conclusion of the hearing, I will review the facts, make a decision and notify you of the decision within five (5) days.

Joshua will remain on suspension until a final decision has been made and is not allowed on Waterford School District property without authorization from a school administrator.

(*Id*).

This scheduled meeting was cancelled by Aldrich because Plaintiff withdrew from Kettering on September 13, 2001. (*See* Defs.' Ex. Q). On September 20, 2001, in response to a letter from Aldrich, dated September 19, 2001, Plaintiff's counsel informed Aldrich that Plaintiff's parents had not withdrawn Plaintiff from Kettering, but rather enrolled him in the Pontiac School District "to provide him with the

---

1. Plaintiff attended Kettering at the time of these events, and was suspended from Ketter- ing.

education that the Waterford District has refused to provide." (Pl.'s Resp. Ex. H).

In a letter dated October 9, 2001, Plaintiff's parents informed Aldrich that "effective Monday October 15, 2001, we wish to re-enroll our son, Joshua B. Mahaffey in Waterford Mott High School." (Defs.' Resp. Ex. T). Aldrich responded in a letter dated October 10, 2001, setting a hearing for October 17, 2001. (*See* Defs.' Ex. U). This letter contained the same language as the previous letter regarding Plaintiff's right to participate in the hearing, have counsel and witnesses present, and that Plaintiff was not allowed on Waterford School District property without authorization, but the letter did not make any statements regarding suspension of Plaintiff.

The hearing was held on October 17, 2001. Aldrich conducted the hearing. The hearing was conducted pursuant to the "WSD Discipline Hearing Protocol." (Defs.' Ex. V). The hearing concluded when, after exchanges between Aldrich and Plaintiff's counsel, Aldrich stated "[a]ll right. I'm sorry. This is not working." (Pl.'s Resp. Ex. D. at 48).

In a letter dated November 27, 2001, Aldrich notified Plaintiff's parents that she was "not recommending expulsion from the Waterford School District due to Categories 5, 23, and 24 and reclassified the violation to Category 24. Joshua may enroll starting second semester on January 21, 2002." (Pl.'s Resp. Ex. F).

Plaintiff did not enroll in the Waterford School District, but instead graduated from the Pontiac School District one year earlier than expected (Plaintiff skipped the eleventh grade).

## DISCUSSION

The respective motions for summary judgment are discussed below in relation to each of Plaintiff's claims.[2]

### I. *Free Speech and Free Expression:*

■ The Supreme Court has held that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Com. Sch. Dist.*, 393 U.S. 503, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). The students involved in *Tinker* had worn black armbands to school to protest the Vietnam War. The Court held that punishing the students for such behavior, without any showing by the school that the conduct interrupted school activities or intruded on the lives of others, was a violation of the students' First Amendment Rights. *Id.* at 740–41. The Court stated that:

> In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school as well as out of school are "persons" under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State.

*Id.* at 739.

The *Tinker* Court dealt with student activities that occurred on school property.

---

**2.** Because Plaintiff's rights under the Michigan Constitution are coterminous with his rights under the United States Constitution, the Court only need discuss Plaintiff's rights under the United States Constitution. *See Lucas v. Monroe County*, 203 F.3d 964, 972 (6th Cir.2000)(stating "[b]ecause Plaintiffs' rights under the Michigan Constitution essentially track those guaranteed by the United States Constitution, the same analysis that governs their federal constitutional claims applies to their corresponding state claims")(citing *Woodland v. Michigan Citizens Lobby*, 423 Mich. 188, 378 N.W.2d 337 (1985); *Roy v. Rau Tavern, Inc.*, 167 Mich.App. 664, 423 N.W.2d 54 (1988)).

The only evidence put forth by Defendants in support of activity occurring on school property in the case at bar is Plaintiff's equivocal statement made to an investigating police officer that some of the website creation "may have" taken place on Kettering computers. (*See* Defs.' Ex. Z). Defendants did not investigate this statement any further by examining school computers, or by any other means. In this Court's opinion, even looking at Plaintiff's statement in the light most favorable to Defendants, the evidence simply does not establish that any of the complained of conduct occurred on Kettering property.

■ Even assuming that the conduct in question did occur on Kettering property, Defendants may only punish Plaintiff for his speech on the website if that speech "substantially interfere[d] with the work of the school or impinge[d] upon the rights of other students." *Tinker*, 89 S.Ct. at 738. In the case at bar, there is no evidence that the website interfered with the work of the school or that any other student's rights were impinged.

Plaintiff argues that because the conduct in question did not occur on Kettering property, Defendants violated his constitutional rights when they punished him for it. In support, Plaintiff cites *Thomas v. Board of Education, Granville Central School Distr.*, 607 F.2d 1043 (2nd Cir. 1979). In *Thomas*, the Second Circuit stated that school officials are granted "substantial autonomy within their academic domain[,]" and that this power "rests in part on the confinement of that power within the metes and bounds of the school itself." *Id.* at 1052(citation omitted). The *Thomas* Court found the conduct in that case, the publication of a magazine parody, "was conceived, executed, and distributed outside the school. At best, therefore, any activity within the school itself was De minimis." *Id.* at 1050. The court held the school officials had, therefore, exceeded their powers when they punished the students for this out of school conduct.[3]

Defendants, on the other hand, contend that they are allowed to discipline students for off campus conduct if the disciplinary rule is reasonable and the off campus conduct has "an effect on the discipline or general welfare of the school." (Defs.' Br. at 12). In support, Defendants cite *Pollnow v. Glennon*, 757 F.2d 496 (2nd Cir. 1985); *Bush v. Dassel–Cokato Bd. of Educ.*, 745 F.Supp. 562 (D.Minn.1990); *J.S. v. Bethlehem Area School District*, 757 A.2d 412 (Pa.Cmwlth.Ct.2000); and *Boucher v. School Bd. of Greenfield*, 134 F.3d 821 (7th Cir.1998). None of these cases support Defendants punishing Plaintiff for his off-campus "speech" in the case at bar.

The issues before the *Pollnow* Court involved qualified immunity.[4] *Pollnow* dealt with facts totally dissimilar to the facts of the case at bar. In *Pollnow*, the student was suspended for an assault that occurred off campus. In its discussion of

---

**3.** Further support for Plaintiff's position may be found in Justice Brennen's concurrence in *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). In *Fraser*, the Supreme Court held that the school district had "acted entirely within its permissible authority" in sanctioning a student for his "offensively lewd and indecent speech" during a school assembly. *Id.* at 3165. However, Justice Brennan expressed his "understanding of the breadth of the Court's holding[,]" stating that if the speech

subject to sanction within the school environment had occurred "outside of the school environment, [the student] could not have been penalized simply because government officials considered his language to be inappropriate . . . ." *Id.* at 3167 (Brennan, J., concurring)(citing *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971)).

**4.** No issue of qualified immunity is present in the case before this Court. *See, infra,* n.6.

the district court's opinion, the Second Circuit merely summarized the opinion which held, in part, that the suspension for off campus conduct was proper under state law. Neither this statement nor the facts and circumstances of *Pollnow* support Defendants' assertion here that they are entitled to suspend Plaintiff for off campus conduct.

In *Bush,* the district court, after deciding that plaintiff's actions were not protected by the First Amendment, decided that the regulation authorizing the punishment was rationally related to the purpose. *Bush,* 745 F.Supp. at 570–72. The case at bar deals with protected speech under the First Amendment; therefore, *Bush* does not support Defendants' position.

In *J.S.,* a student was punished for his derogatory depiction of a teacher on his home created website. The *J.S.* Court stated that "it is evident that the courts have allowed school officials to discipline students for conduct occurring off of school premises *where it is established that the conduct materially and substantially interferes with the educational process." J.S.,* 757 A.2d at 421(emphasis added). In *J.S.,* the teacher depicted on the website, after viewing the website, was unable to complete the school year and took a medical leave of absence for the following school year. *See id.* Thus, the court found that the website had interfered with the educational process. There is no such evidence of disruption on the record before this Court.

*Boucher* involved an underground paper that was distributed on campus and included an article that gave instructions on how to hack into the school's computer system. The court found that there was evidence of past disruption and evidence of potential future disruption to the school due to the article in question. *Boucher,* 134 F.3d at 826–28. There is no such evidence in the case at bar. Furthermore, the article involved in *Boucher* purported "to be a blueprint for the invasion of [the school's] computer system along with encouragement to do just that." *Id.* at 828. There is no similar "blueprint" or encouragement involving Kettering in the case at bar.

■ Finally, Defendants contend that the speech in question should not be afforded First Amendment protection because it constitutes threats. The Sixth Circuit has "defined a 'true threat' to constitute 'a statement, written or oral, [made] in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or take the life of [the target], and that the statement not be the result of mistake, duress, or coercion.'"[5] *United States v. Lineberry,* 7 Fed.Appx. 520, 2001 U.S.App. LEXIS 5856 (6th Cir.2001)(quoting *United States v. Lincoln,* 462 F.2d 1368, 1369 (6th Cir.1972)).

---

**5.** Defendants cite two cases in support of their threat argument; one case from the Ninth Circuit and one from the Eight Circuit. *See Lovell v. Poway Unified School District,* 90 F.3d 367 (9th Cir.1996) and *Doe v. Pulaski,* 306 F.3d 616 (8th Cir.2002). These cases, however, apply conflicting standards. The Ninth Circuit looks at the statement from the viewpoint of the maker, whereas the Eight Circuit looks at the statement from the viewpoint of the recipient. The Eight Circuit's

view conflicts with the Sixth Circuit's view; therefore, the *Pulaski* case cited by Defendants is not persuasive.

In *Lovell,* the student had made the statement "[i]f you don't give me the schedule change I'm going to shoot you" or "I'm so angry I could just shoot someone." *Lovell,* 90 F.3d at 369, n.1. The statements in the case at bar bear no resemblance to the statement in *Lovell.*

There is no evidence on the record that Plaintiff communicated the statements on the website to anyone. Plaintiff has stated that the website was created "for laughs," and that he never meant "anyone else to see it." (Pl.'s Ex. H). Although other students did see the website, there is no evidence that they did so because Plaintiff "communicated" the website to them or intended to do so. Furthermore, other than listing the names of other students on the website, there was no threat made against any of the students. In fact, the website contained the statement: "PS: NOW THAT YOU'VE READ MY WEB PAGE PLEASE DON'T GO KILLING PEOPLE AND STUFF THEN BLAMING IT ON ME. OK?" (Pl.'s Ex. F)(emphasis in original). In this Court's opinion, a reasonable person in Plaintiff's place would not foresee that the statements on the website would be interpreted as a serious expression of an intent to harm or kill anyone listed on the website. Plaintiff's listing of names under the heading "people I wish would die," did not constitute a threat to the people listed therein anymore than Plaintiff's listing of names under the heading "people that are cool," make those listed therein "cool." The website and the statements contained thereon do not constitute a threat and are, therefore, protected speech.

■ Defendants' regulation of Plaintiff's speech on the website without any proof of disruption to the school or on campus activity in the creation of the website was a violation of Plaintiff's First Amendment rights. Therefore, Plaintiff's motion for summary judgment shall be granted on his free speech and free expression claims.[6]

## II. *Due Process:*

■ Plaintiff claims his due process rights were violated when he was suspended indefinitely and when Defendants sought to expel him from the school district. The Supreme Court in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), stated "the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id.* at 736. The Court discussed suspensions and stated:

A short suspension is, of course, a far milder deprivation than expulsion. But, "education is perhaps the most important function of state and local governments," and the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child. Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary.

*Id.* at 737 (internal citation omitted).

In *Goss,* the Court was faced with a short suspension, not exceeding ten days. The Court held that in such short suspension cases, "due process requires ... that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence

---

6. Defendant Aldrich also asserts the defense of qualified immunity. Plaintiff, however, correctly points out that the defense of qualified immunity is only available in personal capacity suits and that the instant suit is against Aldrich in her official capacity. *See*

*Biggs v. Meadows,* 66 F.3d 56, 61 (4th Cir.1995)(stating "qualified immunity is available only in a personal capacity suit")(citing *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

the authorities have and an opportunity to present his side of the story." *Id.* at 740. Cases involving longer suspensions or expulsion, the Court held, "may require more formal procedures." *Id.* at 741.

In the case at bar, the Waterford School District Code of Conduct provides for different hearing procedures depending on the discipline level, which is designated by conduct. The Code of Conduct provides that expulsion from school is discipline level six. For a discipline level five or six, the Code of Conduct provides that:

1. The student may be represented by counsel present or another person that the student may select for advice.

2. The student's parent(s)/guardian may be present, and every effort shall be made to facilitate their attendance at the hearing.

3. The evidence supporting the charge of misconduct against the student shall be presented.

4. The student may testify on his or her own behalf and give reasons for the conduct.

5. The student may present witnesses and cross-examine other witnesses who testify. Parents and/or students are responsible to contact and make arrangements for those person [sic] they select to be present.

6. The administrator conducting the hearing shall make an impartial recommendation based on evidence to:
   A. Give a long Term Suspension or propose Expulsion, or
   B. Reject the recommendation for a Level 5 or 6 discipline and provide an appropriate disciplinary plan for the student

7. The student and parent(s)/guardian shall be informed of the administrator's recommendation in writing within five school days of the hearing.

8. The decision of the director is final for a Level 5 discipline action.

9. Where expulsion is recommended, the Director shall forward the recommendation, along with documentation for the recommendation, to the Superintendent of Schools.

10. The Superintendent or designee shall review the case and discuss it with the parent(s).

11. If the Superintendent or designee concludes that the student should be suspended or expelled, the student and parent(s)/guardian shall be notified that such a recommendation shall be presented to the Board of Education.

(Compl. Ex. A at 19–20).

The hearing in this case, however, was not conducted under the procedures set forth in the Code of Conduct. The hearing was conducted pursuant to the Waterford School District Discipline Hearing Protocol (the Protocol). The Protocol provides:

1. **The purpose** of the hearing is to impartially hear/review the evidence regarding the disciplinary situation and potential expulsion.

2. **The outcome** of the hearing will be for the hearing official to hear all pertinent information related to the case in order to determine a recommendation/decision in favor of or against the assigned discipline (consequence). The discipline could include suspension and/or expulsion.

3. **The decision** will be made by the hearing official within 5 business days of the hearing. Parents/guardians will be notified in writing of the decision. The related content of the *WSD Student Code of Conduct* and *The Michigan School Code* will guide the decision. The decision of the hearing official is final.

4. **The hearing official** may invite the following persons FROM THE SCHOOL DISTRICT to participate:

- Anyone who is able to provide first-hand evidence and/or
- Anyone who can provide an impartial perspective or further insight into the case and/or
- A recorder

  \*    \*    \*    \*    \*    \*

5. **The PARENTS and/or STUDENT** may invite:
- Witnesses
- Counsel
- Any person that will be an advocate for the student or will offer the student advice to the case at hand

6. **The process** for the hearing will be as follows:
- The HEARING OFFICIAL will invite all those participating in the HEARING into the HEARING ROOM. Introductions will be made.
- The HEARING OFFICIAL will call the HEARING to order.
- The HEARING OFFICIAL will review the HEARING PROCEDURE with all those present. This will include:

  ☐ A review of this process—information gathering.

  ☐ A review of the protocol, which includes:

  ☐ There is to be no cross-examination or discussion between the administrator and student/student representatives.

  ☐ Appropriate behavior is expected of all participants. This includes no arguing or debate—respectful conversations.

  ☐ Information discussed should only pertain to the particular case at hand.

- The HEARING OFFICIAL will ask the administrator making the disciplinary recommendation to present their case for expulsion. In some cases, the HEARING OFFICIAL may present the evidence of the case.
- Upon completion of hearing the case, the HEARING OFFICIAL may ask questions and then may ask those invited to leave the HEARING ROOM.
- The HEARING OFFICIAL will then ask the student/parent to present their side of the case. The HEARING OFFICIAL may ask questions of the student/parent after hearing their evidence or perspective.
- The HEARING OFFICIAL will then call the meeting to a close, reminding the student/family group that a decision will be made within 5 business days.
- The HEARING is completed.

(Defs.' Ex. V).

In the hearing conducted on October 17, 2001, Plaintiff was represented by counsel. Plaintiff's counsel attempted several times to cross-examine witnesses, but was denied the opportunity to cross examine witnesses. Plaintiff was also not allowed to call district employees as witnesses.

Defendants' reason for conducting the hearing pursuant to the Protocol rather than the Code of Conduct is that at the time of the hearing Plaintiff was not a student in the Waterford District. However, Defendants have not directed this Court's attention to anything in either the Protocol or the Code of Conduct that provides for use of the Protocol in this situation.

The suspension in this case, effectively, was for the first semester of the school year. Although the hearing was conducted on October 17, the letter informing Plaintiff of the decision was not sent until November 27. In that letter, Plaintiff was informed that he could return to the Waterford School District beginning in the second semester of the school year, in January, 2002.

Considering the length of the suspension in this case, the hearing afforded the Plaintiff violated his due process rights. The Waterford School District itself has established procedures outlined above in the Code of Conduct for hearings regarding possible expulsion. The Code of Conduct provides that "[s]tudents are citizens and therefore have the right to Due Process as guaranteed by the Constitution of the United States of America. In terms of the Discipline Guidelines for Student Misconduct of the Waterford School District, the following procedures for due process **shall be observed.**" (Compl. Ex. A at 18)(emphasis added). In cases involving suspension of 11 days or more or expulsion, the Code of Conduct provides that "the student has the right to call witnesses on his/her own behalf, cross-examine other witnesses who testify and be represented by counsel." (*Id*). In the case at bar, Defendants chose to not follow these procedures but to follow the procedures set out in the Protocol.

Defendants' contention that the Code of Conduct did not apply because Plaintiff was not a student in the District at the time of the hearing is not persuasive. Whether Plaintiff was or was not a student in the District, he faced punishment for violations outlined in the District's Code of Conduct. He was then punished pursuant to the Code of Conduct. His punishment—the suspension—was from a school in the District. In this Court's opinion, Plaintiff was entitled, at a minimum, to the process set forth in the Code of Conduct. Defendants' disregard of this process violated Plaintiff's due process rights. *See Thomas,* 607 F.2d at 1054 ("there can be no doubt that discipline imposed exactly contrary to the announced standards of school authorities is constitutionally impermissible")(Newman, J., concurring). Therefore, Plaintiff is entitled to summary judgment on his Due Process claims.[7]

## III. *Disability Claims:*

Plaintiff has brought claims against Defendant Waterford Board under Section 504(a) of the Rehabilitation Act (Section 504), Title II of the Americans with Disabilities Act (ADA), and the Michigan Persons with Disabilities Civil Rights Act (MPDCRA). Section 504 provides "[n]o otherwise qualified individual with a disability in the United States, as defined in section 7(20), shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C § 794(a). Title II of the ADA provides "[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity ...." 42 U.S.C. 12132. The MPDCRA provides "[t]he opportunity to obtain ... full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right."[8] M.C.L. § 37.1102(1).

**7.** Plaintiff also challenges the constitutionality of certain regulations and statutes involved in this case. Because the Court's finding that Plaintiff's constitutional rights have been violated reasonably disposes of the issues at hand, the Court need not delve into the constitutionality of the challenged statutes and regulations. *See Fleet Aerospace Corp. v. Holderman,* 848 F.2d 720, 724 (6th Cir.1988)(stating "[t]he general principle in cases involving a constitutional challenge is to avoid striking a statute as unconstitutional if the viable issues in the case may be disposed of on some other reasonable basis").

**8.** Resolution of Plaintiff's federal disability claims will also resolve Plaintiff's claims under Michigan law. *See Cassidy v. Detroit Edi-*

In order to establish a prima facie case, Plaintiff must establish: 1) that he is a person with a disability; 2) that he "is qualified for the educational opportunity that he seeks despite his" disability; and 3) "[i]n spite of these qualifications, he has not been given an equal opportunity to secure a similar education as other persons." *Hoot v. Milan Area Schools*, 853 F.Supp. 243, 248 (E.D.Mich.1994)(setting forth the prima facie case under Michigan law and stating the "test mirrors the requirements of Section 504 of the Rehabilitation Act and the ADA ...").

Plaintiff asserts that:

(1) Waterford repeatedly failed to evaluate Josh to determine his eligibility ... (2) Waterford failed to provide Josh or his parents with the procedural notices required by Section 504 ... (3) Waterford illegally excluded Josh by suspending him indefinitely without first determining if his conduct was a manifestation of the very disability they chose to ignore ... (4) throughout the suspension period, Waterford again refused to evaluate Josh.

(Pl.'s Br. at 28). At the hearing held on these motions, Plaintiff's counsel acknowledged that Plaintiff's discrimination claims are a "procedural attack," referring to the procedures set forth under Section 504 Regulations.

The Court is not persuaded that Plaintiff has set forth a claim under Section 504, Title II of the ADA, or the MPDCRA. All three prohibit discrimination due to a student's disability. Defendants' alleged failure to adhere to Section 504 Regulations or procedures does not give rise to a claim that Defendants discriminated against Plaintiff based solely on his disability. Plaintiff has not directed this Court's attention to any case where a violation of Section 504's procedural protections was held to be discrimination based on disability. Plaintiff cannot meet the requirements for a prima facie case under any of the three statutes. Therefore, Defendants shall be granted summary judgment on Plaintiff's disability claims under Section 504, the ADA, and the MPDCRA.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment shall be granted on his claims under the First and Fourteenth amendments to the United States Constitution (Counts I and II) and free expression and due process claims under the Michigan Constitution (Counts III and IV). Defendants shall be granted summary judgment on Plaintiff's disability claims (Counts V, VI, and VII) because there is no genuine issue of fact that Plaintiff cannot set forth a prima facie case of discrimination under Section 504, Title II of the ADA, or the MPDCRA. Plaintiff has withdrawn his claim under the Family Education Rights and Privacy Act (Count VIII).

An Order consistent with this Opinion shall issue forthwith.

## ORDER

This action was filed by Greg and Kari Mahaffey representing their minor son, Joshua Mahaffey (Plaintiff). The action arises from Plaintiff being suspended from school by Defendants, Peni Aldrich and the Board of Education of the Waterford School District. Plaintiff's Complaint set forth the following causes of action: Count I) violation of Plaintiff's free speech rights under the First Amendment; Count II)

*son Co.*, 138 F.3d 629, 634, n. 3 (6th Cir.1998)(stating "Michigan handicap and employment discrimination law essentially tracks federal law. Generally, resolution of the federal claims will also resolve Plaintiff's [Michigan] claims.") (citations omitted).

violation of Plaintiff's due process rights under the Fourteenth Amendment; Count III) violation of Plaintiff's free expression rights under the Michigan Constitution; Count IV) violation of Plaintiff's due process rights under the Michigan Constitution; Count V) violation of Section 504 of the Rehabilitation Act of 1973; Count VI) violation of Title II of the Americans with Disabilities Act; Count VII) violation of Michigan's Persons with Disabilities Civil Rights Act; Count VIII) violation of the Family Educational Rights and Privacy Act.[1] The parties have filed motions for summary judgment. A hearing was held on the motions on October 17, 2002.

For the reasons set forth in an Opinion issued this date,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment is hereby **GRANTED** as to Plaintiff's claims under Counts I, II, III, and IV of Plaintiff's Complaint.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is hereby **GRANTED** as to Plaintiff's claims under Counts V, VI, and VII of Plaintiff's Complaint, and Counts V, VI, and VII of Plaintiff's Complaint are hereby **DISMISSED.**

---

1.  Plaintiff has withdrawn his claim under the    Family Education Rights and Privacy Act.