Sarah LOVELL, a minor, By and Through her Guardian Ad Litem, Gregory C. LOVELL; Gregory C. Lovell, Plaintiffs,

v.

POWAY UNIFIED SCHOOL DISTRICT; Scott Fisher, in his official capacity; Mary Heath, in her official capacity, Defendants.

Civ. No. 93–00619 R (AJB).

United States District Court,
S.D. California.

March 18, 1994.

Schulman & Schulman by Elizabeth Schulman, San Diego, CA, for plaintiffs.

Stutz, Gallagher & Artiano by Christoper J. Welsh, San Diego, CA, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BATTAGLIA, United States Magistrate Judge.

The above-entitled cause came regularly for trial on February 23, 1994 at 8:30 a.m. in Department F of the above-entitled Court, the Honorable Anthony J. Battaglia, Magistrate, presiding without a jury.

The issues tried in this matter are raised in the Complaint and Answer thereto, and specifically stated in the Stipulation and Order signed by Magistrate Judge Leo S. Papas on January 21, 1994 as follows:

1. Whether Defendants violated Plaintiff's right to exercise free speech;

2. Whether Defendants violated Plaintiff's right to due process, including procedural due process, substantive due process, and liberty interest;

3. Whether Plaintiff was required to exhaust any administrative remedies;

4. Whether Plaintiff is entitled to a declaratory judgment declaring the school district, its agents, servants, employees, and officials violated Sarah Lovell's rights guaranteed pursuant to Education Code § 48950 and 42 U.S.C. § 1983 by imposing discipline upon her; failed to afford Plaintiff substantive and procedural due process; and damaged Plaintiff's reputation; and

5. Whether any of the parties are entitled to recover attorneys fees and costs.

Oral and documentary evidence were introduced on behalf of the respective parties and considered by the Court. After hearing the evidence and considering legal memoranda and arguments of counsel, the Court now determines the following with respect to the factual and legal bases as to each of the principle issues that were tried in this matter:

## FINDINGS OF FACT

1. Plaintiff, SARAH LOVELL, was a 15 year old minor and a full-time student enrolled at Mount Carmel High School. GREGORY C. LOVELL is the father of SARAH LOVELL and her Guardian Ad Litem appointed by the Court. Nina Lovell is the mother of SARAH LOVELL. At all times relevant to this lawsuit, SARAH LOVELL was a Sophomore at Mount Carmel High School.

2. Mount Carmel High School is a high school located within the POWAY UNIFIED SCHOOL DISTRICT ("PUSD"). PUSD is a public school district, operating in and under the laws of the State of California and is located in the County of San Diego.

3. At all times relevant hereto, Defendant, SCOTT FISHER, was principal of Mount Carmel High School.

4. At all times relevant hereto, MARY HEATH was an Assistant Principal at Mount Carmel High School.

5. Mary Heath was specifically designated by the principal, in writing, to assist with disciplinary procedures, as required by Education Code § 48911(i) for those students in the A through L portion of the alphabet.

6. On January 29, 1993, SARAH LOVELL sought the assistance of her High School Counselor, Linda Suokko, to effectuate changes to her class schedule for the Spring semester. Linda Suokko told SARAH LOVELL she was unable to render assistance until Tuesday, February 2, 1993, as no changes could be made in the computer until such date.

7. On Tuesday, February 2, 1993, SARAH LOVELL undertook steps to have her schedule changed for the Spring semester. SARAH LOVELL was directed back and forth between Administrators over the course of a several hour period in her attempts to have her schedule changed for the Spring semester. This was a very frustrating experience.

8. Assistant Principal, Scott Wright, had the ultimate authority to allow the schedule changes required by SARAH LOVELL. Scott Wright approved the schedule changes as requested by SARAH LOVELL and provided her with the necessary paperwork to take to her counselor, Linda Suokko.

9. Following Scott Wright's approval of SARAH LOVELL's schedule change, Linda Suokko's only remaining tasks were ministerial in nature.

10. SARAH LOVELL again waited in line to see Linda Suokko for the last time at approximately 1:30 p.m. on February 2, 1993.

11. After entry into Linda Suokko's office, and Linda Suokko's attempts to input the information regarding the class changes, Linda Suokko discovered that Scott Wright had permitted SARAH LOVELL to be put

in overloaded classes and Linda Suokko stated the same to Sarah. At that time, Sarah became more frustrated and angry.

12. The evidence is in substantial conflict with regard to whether or not Sarah said, "If you don't change the schedule, I'm going to shoot you" versus, "I'm so angry, I could just shoot someone". Neither party preponderated in their evidence, nor are the exact words necessary to the Court's findings.

13. Following this statement by SARAH LOVELL, Sarah apologized to Linda Suokko and said her choice of words had been inappropriate. Linda Suokko continued with schedule changes.

14. SARAH LOVELL took no physical actions whatsoever against the person of Linda Suokko, nor had possession of a gun or other weapon.

15. Linda Suokko took no immediate action regarding SARAH LOVELL's words at or during the meeting with SARAH LOVELL.

16. Linda Suokko continued with her work of meeting with other students for the remainder of the day following the last contact with SARAH LOVELL.

17. At approximately 4:30 p.m. on February 2, 1993, Linda Suokko went to see Scott Wright. Linda Suokko was required to leave her building, cross campus, and enter the building where Mr. Wright was officed. The evidence demonstrates that Scott Wright gave Linda Suokko a student referral form following a discussion with regard to the subject event.

18. Linda Suokko completed the Student Office Referral Form (Exhibit 4) and handed the form to Assistant Principal MARY HEATH's secretary at approximately 7:30 a.m. on February 3, 1993. The Student Office Referral Form states in relevant part that Sarah stated to Linda Suokko as follows: "If you don't give me this schedule change, I'm going to shoot you!" The Student Office Referral Form specifically states: "I believe that the tone and manner conveyed by SARAH LOVELL demonstrates **a possible future danger.**"

19. At approximately 10:30 a.m. on February 4, 1993, SARAH LOVELL was summoned to MARY HEATH's office. A conference was held between MARY HEATH, Linda Suokko, and SARAH LOVELL. As a result of this conference, SARAH LOVELL was informed she was being suspended from school for three days for threatening her counselor, Linda Suokko.

20. Following the meeting between SARAH LOVELL, MARY HEATH, and Linda Suokko, Mary Heath and Linda Suokko met with Nina Lovell in person and Gregory Lovell participated by phone, and a discussion occurred with regard to the events, and Mr. and Mrs. Lovell were advised · that Sarah Lovell was being suspended from school for three days for threatening her counselor, Linda Suokko.

21. Following the meeting involving the parents, Mrs. Lovell was handed a copy of the notice of suspension (Exhibit 7) which provided, among other things, reference to appeals procedure.

22. Following the meetings as set forth in Paragraphs 18 and 19, SARAH LOVELL's three day suspension commenced.

23. During the three day suspension, the Lovells were notified by the school that no further action with regard to the "event", i.e. expulsion, would be imposed as discipline.

24. The evidence at trial demonstrates PUSD never provided the Lovells with any documents containing the Disciplinary Policy and appeals process other than the notice of suspension (Exhibit 7), until after the commencement of the instant litigation when the documents were obtained by means of discovery.

25. On February 16, 1993, SARAH LOVELL, NINA LOVELL, GREGORY LOVELL and an attorney representing the Lovells, George Braun, met with principal, SCOTT FISHER. This meeting occurred within three school days of the Lovells making a demand upon the Superintendent's office for a copy of the PUSD policy on discipline and appeals process.

## CONCLUSIONS OF LAW

1. *Defendants did violate Plaintiff's right to exercise free speech and Plaintiff is entitled to a declaratory judgment declaring the school district, its agents, servants, employees, and officials violated SARAH LOVELL's rights guaranteed pursuant to Education Code § 48950 and 42 U.S.C. § 1983 by imposing discipline upon her.*

The right to free speech is guaranteed in the Bill of Rights, and notably is the First Amendment. Preservation of this principle has long been cherished as significant to our democracy and this fact certainly frames the significance of the issues presented herein.

■ It is clear that the United States, the State of California, and the Poway Unified School District may impose boundaries on the rights of free speech guaranteed under the First Amendment by prohibiting threats of physical injury. *See Watts v. U.S.*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (finding facially constitutional a law prohibiting threats to the life of the President); 18 U.S.C. § 871 (threatening the life of the President); 18 U.S.C. § 115 (threatening to assault a federal law enforcement officer); Cal.Penal Code § 422 (threatening to commit a crime which will result in death or great bodily injury). However, it is not sufficient to argue, as submitted by Defendants, that the policy of the PUSD does not impact on First Amendment rights because "threats" are not protected by the First Amendment. The policy of the PUSD can be violated, and here allegedly was violated, by acts which consist of pure speech. "[A] statute such as this one, which [prohibits] a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." *Watts*, 394 U.S. at 707, 89 S.Ct. at 1401.

California courts have looked to the case of *United States v. Kelner*, 534 F.2d 1020 (2d Cir.1976) to define the relationship between the state's interest in preventing the communication of threats, and the individual right to freedom of speech under the First Amendment. In *Kelner*, the defendant was convicted for communicating a threat to injure the person of another under 18 U.S.C. § 875(c). As in the case at hand, the statute involved in *Kelner* did not define "threat." One of Kelner's arguments for reversal of his conviction was that his statements were not "threats" within the meaning of the statute. The court in *Kelner* held that "to satisfy First Amendment protections, punishable threats are limited to those statements which, according to their language and context, convey a gravity of purpose and likelihood of execution." *People v. Fisher*, 12 Cal.App.4th 1556, 1559, 15 Cal.Rptr.2d 889, 891 (1993). So long as the circumstances are such that the threat is unambiguous, and has an immediacy which conveys convincingly an intent that it be carried out, there is no need for proof of a specific intent to carry out the threat. *Id.*

The 9th Circuit has used a similar objective test to define threats: "Whether a statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault...." *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 (9th Cir.1990). As such, "[a]lleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners." *Id.* These cases provide a great deal of guidance in how to determine whether the alleged statement by Sarah Lovell was, indeed, a threat.

■ Counsel for Plaintiff has urged the Court to adopt a definition of threat which is analogous to the concepts of "fighting words" and/or "epithets" from *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) and subsequent cases. This would, in effect, force the school to show that a student posed a "clear and present danger" as in *Collin v. Smith*, 447 F.Supp. 676, 690 (N.D.Ill.) affd. 578 F.2d 1197 (7th Cir.), cert. den. 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978). Although the legislative history

of Education Code § 49850 uses these cases and concepts to illustrate what types of conduct is to be protected by that section, there is no indication that the legislature intended to change the way that threats are defined in the State of California. The purpose of § 49850 is to ensure that "a student shall have the same right to exercise his or her right to free speech on campus as he or she enjoys when off campus." § 49850, Historical and Statutory Notes, at subsection (b). The "fighting words" and "clear and present danger" tests were developed to protect First Amendment rights in cases involving the use of words which has the potential of inciting a breach of the peace. *See Kelner,* 534 F.2d at 1025. Here, it is not alleged that Sarah Lovell urged her fellow students to violently revolt against the administration of Poway High School to protest the frustrating process of obtaining schedule changes. It would be wrong, therefore, to apply a "clear and present danger" test to determine whether her actions are protected by the First Amendment.

■ Applying the appropriate tests as stated in *United States v. Kelner,* and *United States v. Orozco–Santillan,* the Court finds that the Plaintiff did not make the requisite "threat" required by law, under either contention as to the exact words spoken, to allow infringement on her right of free speech as guaranteed by the Education Code and the United States Constitution. The Court simply did not feel that there was the gravity of purpose and likelihood of execution, nor the intent to harm or assault to allow the imposition of discipline by way of suspension in this case. This decision is based upon the entire factual context in which the disputed statement was made by SARAH LOVELL, including that fact that SARAH LOVELL had spoken with Linda Suokko several other times on the same day regarding the schedule change, and that SARAH LOVELL in no way acted in a physically threatening manner. In addition, the Court takes into consideration the conduct of Linda Suokko after hearing the disputed statement, including the fact that she did not seek immediate assistance, and that she did not speak with anyone else about the alleged threat until almost three hours later. As inappropriate and im-

patient as SARAH LOVELL's conduct and words appeared to be, the overriding interest in the right of free expression prohibits the penalties imposed by PUSD in this case.

2. *Defendants did not violate Plaintiff's rights to due process, including procedural due process, substantive due process, and/or liberty interests.*

■ In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court established that minimum due process including notice of the charges and an opportunity to refute them must be provided when a student is suspended for a period of less than 10 days. In answer to the *Goss* decision, the legislature of California enacted California Education Code §§ 48900, *et seq.* Education Code §§ 48900 and 48911 are part of a comprehensive legislative scheme designed to ensure procedural fairness in suspension proceedings. *Tirpak v. Los Angeles Unified Sch. Dist.,* 187 Cal. App.3d 639, 232 Cal.Rptr. 61, 64 (1986).

Based upon the findings that Mary Heath had the requisite authority in compliance with Education Code § 48911(i) and that the school provided a meeting with the parents as required by § 48914 of the Education Code, the Court finds that the Plaintiff had the requisite notice and opportunity to be heard with regard to the suspension, prior to the suspension being implemented in this action. While other actions and activities took place with regard to the wording of the STUDENT OFFICE REFERRAL (Exhibit 4) and the clarification of said wording, the process and procedures are outside the scope of the dispute in issue, which, focused upon the imposition of the discipline specifically for Plaintiff's speech.

3. *Plaintiff was not required to exhaust any administrative remedies in order to pursue her claims under Education Code § 48950 and/or 42 U.S.C. § 1983.*

■ Neither Education Code § 48950 nor 42 U.S.C. § 1983 require administrative procedure as a condition precedent to an action or the jurisdiction of the U.S. District Court in these regards. No authority was cited nor

any located with regard to any administrative process in this regard. Assuming, for the sake of argument, that administrative action was required, the hearing with the counselor occurring on February 4, 1993, the subsequent meeting involving the parents (with Mr. Lovell on the phone) the written letter by the Lovells dated February 10, 1993 and the meeting with the principal, including counsel for the Lovells on February 16, 1994 would certainly seem to be substantial compliance with any reasonable administrative process.

*4. Plaintiff is entitled to recover attorneys fees and costs for prevailing as to the violation of the right of free speech.*

■ A prevailing party, other than the United States, under 42 U.S.C. § 1983 may be awarded reasonable attorney fees as part of costs pursuant to 42 U.S.C. § 1988. The Supreme Court discussed the standards for awarding attorneys fees under § 1988 in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Court clarified:

> The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances. Accordingly, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."

461 U.S. at 429, 103 S.Ct. at 1937 (citations omitted).

■ "A prevailing party is one who has succeeded on any significant claim affording it some of the relief sought, either pendente lite or at the conclusion of the litigation." *Texas State Teachers Assn. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). Where, as here, a plaintiff prevails on only one of several claims, the inquiry is whether there has been a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote" by the passage of § 1988. *Id.* at 792, 109 S.Ct. at 1493. If so, the plaintiff's overall success goes to the reasonableness of the amount of attorney fees awarded, but not to the entitlement to such an award. Because the Plaintiff here

has succeeded on her free speech claim, and because there are no special circumstances which would render such an award unjust, Plaintiff is entitled to attorneys fees under § 1988.

Education Code § 48950 also allows a prevailing *plaintiff* fees in an action of this type. Those fees are within the discretion of the court. Here, having ordered fees under 42 U.S.C. § 1988, there is no need to consider the application of the Education Code in this specific regard.

■ By contrast to the standard for awarding attorneys fees to prevailing plaintiffs under 42 U.S.C. § 1988, "[a] prevailing defendant may recover an attorney's fee only where the suit was 'vexatious, frivolous, or brought to harass or embarrass' the defendant. *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937 (citations omitted). Despite the fact that defendants prevailed on the due process claim, the Court did not find that the Plaintiff's action relative to due process was vexatious, frivolous, or brought to harass or embarrass the defendants. As a result, prevailing law prevents an award of fees to defendants in this action.

In this action, the Plaintiff's attorneys fees and costs should be limited, as far as practicable, to the case with regard to the free speech violation. Since Plaintiff did not prevail with regard to the due process claim, fees and costs in that respect are not awardable.

WHEREFORE, judgment is ordered to be entered in favor of the Plaintiff and against Defendants on the grounds and bases stated herein. Counsel for Plaintiff is to prepare the Judgement.