Sarah LOVELL, a minor, By and Through her guardian ad litem, Gregory C. LO-VELL, Plaintiff–Appellee,

v.

POWAY UNIFIED SCHOOL DISTRICT; Scott Fisher, in his official capacity; Mary Heath, in her official capacity, Defendants–Appellants.

Sarah LOVELL, a minor, By and Through her guardian ad litem, Gregory C. LO-VELL, Plaintiff–Appellant,

v.

POWAY UNIFIED SCHOOL DISTRICT; Scott Fisher, in his official capacity; Mary Heath, in her official capacity, Defendants–Appellees.

Nos. 94–55715, 94–55717.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1995.

Decided July 18, 1996.

Christopher J. Welsh, Stutz, Gallagher, Artiano, Shinoff & Holtz, San Diego, California, for defendants-appellants-cross-appellees.

Elizabeth Schulman, Schulman & Schulman, San Diego, California, for plaintiffs-appellees-cross-appellants.

* The Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation.

Before: HALL and JOHN T. NOONAN, Jr., Circuit Judges, and PRO,* District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Sarah Lovell, a student at Mt. Carmel High School in the Poway Unified School District ("PUSD"), allegedly threatened Linda Suokko, a school guidance counselor, that she would shoot her if Suokko did not make changes to Lovell's class schedule. Suokko filed a disciplinary report with school administrators, and the school suspended Lovell for three days.

Lovell denies that she threatened Suokko, and claims that she merely uttered a "figure of speech" under her breath while in Suokko's office. Lovell and her parents discussed the incident with school officials and requested that the disciplinary report be removed from Lovell's file. When the school and the PUSD refused to take any action, Lovell instituted this suit against the PUSD and several school officials. She claimed that, by punishing her as a result of her speech, the school violated her rights under the First Amendment of the United States Constitution and the California Education Code. Furthermore, she claimed that she was denied procedural and substantive due process.

The district court rejected her due process claim, but found that the defendants did violate her First Amendment rights. Because she prevailed on one of her claims, the district court awarded her partial attorney's fees under 42 U.S.C. § 1988.

The defendants timely appealed. Lovell cross-appealed on the due process claim and the amount of attorney's fees awarded. Her appeal of the due process claim was rejected, however, because it was not timely filed. The district court had jurisdiction under 28

U.S.C. § 1331, and this court has jurisdiction under 28 U.S.C. § 1291. We reverse.

## I

In February 1993 Sarah Lovell was a 15–year–old 10th grade student. On February 2, she visited Linda Suokko to request changes to her class schedule. Lovell was shuttled back and forth between the counselor's office and the administrative offices for several hours while she attempted to effect the changes. When Lovell finally arrived back at Suokko's office around 1:30 in the afternoon she was frustrated and irritable. This visit to Suokko's office was to have been Lovell's final stop in this brouhaha; Suokko was to have simply entered the approved changes into the school's computer system.

As she entered the changes, however, Suokko noticed that Lovell had been approved for courses that were already overloaded. She told Lovell that she may not be able to make the changes. Lovell, at the end of her patience, made the remark that is the basis of this suit: Lovell claims she said "I'm so angry, I could just shoot someone," whereas Suokko claims she said "If you don't give me this schedule change, I'm going to shoot you!" [1] Lovell then apologized to Suokko for her inappropriate behavior. Suokko com-

pleted the requested schedule change, and Lovell left the office.

Later that day, Suokko reported Lovell's conduct to Assistant Principal Scott Wright. Suokko told Wright that she felt threatened by the statement and was concerned about some future reprisal by Lovell. Suokko filled out a Student Office Referral form and reported the threat as a disciplinary incident to Assistant Principal Mary Heath.

On February 4, two days after the incident, Heath called a meeting with Suokko and Lovell to discuss the matter. At that meeting Lovell admitted making one of the statements given above, although there is some dispute as to what she admitted. But she also claimed that she did not mean anything by it. Suokko said that Lovell was "angry, serious and emotionally out of control when the statement was made," and that she felt threatened. After Heath met with Lovell, Suokko, and Lovell's parents, Heath decided to suspend Lovell for three days.

At first, the Lovells planned to accept the suspension. But when they received a copy of the Student Referral Form submitted by Suokko, they were extremely upset by her portrayal of the events. Specifically they felt that Suokko's version of events differed a great deal from their daughter's version, and that Suokko's report was too strongly worded for the events as they understood them.[2]

---

1. The magistrate judge found that neither side prevailed in its proof regarding what Lovell actually said. *Lovell v. Poway Unified Sch. Dist.*, 847 F.Supp. 780, 783 (S.D.Cal.1994). Although Suokko only listed one version of Lovell's statement in the disciplinary report, she testified at trial that Lovell said both versions of the statement. According to Suokko's testimony, the exchange was as follows: Lovell walked into Suokko's office and immediately said, "If you don't give me the schedule change I'm going to shoot you." Suokko then said, "I'm not used to having people walking into my office and telling me they're going to shoot me." After this, Lovell said, "I'm so angry I could shoot somebody." Reporter's Transcript ("RT") Vol. I, at 193–201.

 Lovell's version of events is somewhat different. According to her testimony, she entered Suokko's office and handed her the approval form for her requested schedule change. Suokko began typing the change into the computer, but then stopped and said, "Well, he [Scott Wright] put you in all overloaded classes, you might have to go back." Lovell then put her head in her hands and muttered under her breath, "I'm so angry I could just shoot some-

one." When she looked up, Suokko had "a blank look on her face," and Lovell realized that she must have heard the statement. Lovell then apologized for her inappropriate comment. RT Vol. I, at 44–45.

 Although the magistrate judge did not resolve what was actually said, he appears to have accepted Lovell's version of events, at least in part. In his factual findings, the judge indicated that Lovell did not make the statement immediately upon entering Suokko's office, but instead after Suokko told her that she had been put into overloaded classes. *Lovell*, 847 F.Supp. at 782–83.

2. The relevant section of Suokko's student office referral stated:

 When Sarah entered my counseling office, after seeing Scott Wright, Sarah stated, "... if you don't give me this schedule change, I'm going to shoot you!" I believe that the tone and manner conveyed by Sarah Lovell demonstrates possible future danger. I have witnessed Sarah's volatile nature, poor and lack of impulse control, and possible violent verbal

They wrote a letter to the school principal, Scott Fisher, demanding that the Referral be removed from Sarah's file. When the school refused to take any action, the Lovells filed this suit against PUSD, Mr. Fisher, and Ms. Heath (hereinafter referred to collectively as "PUSD").

Lovell asserted a variety of federal and state law claims that her rights were violated when PUSD suspended her from school. First, she claimed that the suspension violated her First Amendment free speech rights, as guaranteed by the United States Constitution. Second, she asserted a supplemental state law claim that she was improperly suspended in violation of her free speech rights under California Education Code Section 48950. Third, she claimed that PUSD denied her adequate procedural and substantive due process. Finally, she claimed that PUSD violated 42 U.S.C. § 1983 by imposing discipline on her in contravention of the rights set forth above.

The parties stipulated to a bench trial before a magistrate judge. The court found that PUSD had provided appropriate procedural and substantive due process. *Lovell v. Poway Unified Sch. Dist.*, 847 F.Supp. 780, 785 (S.D.Cal.1994). However, the court also held that PUSD had violated Lovell's free speech rights because her statement did not constitute "the requisite 'threat' required by law, under either contention as to the exact words spoken, to allow infringement on her right of free speech." *Id.* The court awarded Lovell 50% of the requested attorney's fees under 42 U.S.C. § 1988, for work done in furtherance of the successful First Amendment claim.

## II

▮ We review a district court's conclusions of law de novo. *United States v. Yacoubian*, 24 F.3d 1, 3 (9th Cir.1994). A district court's findings of fact are reviewed under the clearly erroneous standard. *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 576 (9th Cir.1995).

▮ Different standards are sometimes used when reviewing district court cases in which the court adjudged the constitutionality of a restriction on speech. When the district court upholds a restriction on speech as constitutional, this court conducts a de novo review of the facts. *Daily Herald Co. v. Munro*, 838 F.2d 380, 383 (9th Cir.1988). However, when the district court strikes down a restriction on speech, as in the current case, this court reviews the findings of fact for clear error. *Id.* "This rule 'reflects a special solicitude for claims that the protections afforded by the First Amendment have been unduly abridged.'" *Id.* (quoting *Planned Parenthood Assoc. v. Chicago Transit Authority*, 767 F.2d 1225, 1229 (7th Cir. 1985)).

The magistrate judge found that PUSD violated Lovell's rights as guaranteed by the California Education Code and the First Amendment of the United States Constitution. Because we find that the magistrate incorrectly applied the relevant law, we now reverse.

### A

▮ Our first concern is that the magistrate judge improperly conflated Lovell's federal and state law claims. We recognize the rule that when a violation of state law causes the deprivation of a right protected by the United States Constitution, that violation may form the basis for a Section 1983 action. *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 n. 22 (9th Cir.) (holding that the violation of a state law requiring a post-arrest hearing before a magistrate judge constituted a cause of action under Section 1983), *cert. denied*, 510 U.S. 991, 114 S.Ct. 549, 126 L.Ed.2d 450 (1993). However, Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal "Constitution and laws." 42 U.S.C. § 1983. To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress. *Brown v.*

---

tendencies. I am extremely concerned about Sarah's potentially explosive behavior.

Excerpts of Record ("ER") at 35.

*Nutsch,* 619 F.2d 758, 764 (8th Cir.1980); *cf. Hallstrom,* 991 F.2d at 1482 n. 22.

The California Education Code ensures that "a student shall have the same right to exercise his or her right to free speech on campus as he or she enjoys when off campus." Cal. Educ.Code § 48950 historical and statutory notes. The district court merged this statute with Section 1983 and found that PUSD violated Lovell's free speech rights. But by analyzing the free speech rights at issue here as if both federal First Amendment law and the California Education Code were coextensive, the district court implicitly and inappropriately allowed the California Education Code to trump federal constitutional law. We cannot enlarge federally protected rights simply because California chose to expand its state-created rights.

As a result, the federal First Amendment claim, asserted pursuant to Section 1983, must be evaluated under federal constitutional law. The state law claim, on the other hand, must be decided under the state's interpretation of free speech rights. Although these two areas of law overlap, they differ in their treatment of students' freedom of expression while on campus. The Supreme Court has held that the First Amendment guarantees only limited protection for student speech in the school context. *See, e.g., Tinker v. Des Moines Indep. Sch. Dist.,* 393 U.S. 503, 509, 89 S.Ct. 733, 738, 21 L.Ed.2d 731 (1969) (holding that schools can punish student conduct that would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school" without violating the First Amendment); *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 266, 108 S.Ct. 562, 568, 98 L.Ed.2d 592 (1988) ("A school need not tolerate student speech that is inconsistent with its basic educational mission, even though the government could not censor similar speech outside the school."); *Bethel Sch.*

*Dist. No. 403 v. Fraser,* 478 U.S. 675, 682, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549 (1986) ("[T]he constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings."). In contrast, the California Education Code extends students' free speech rights while on campus to the same extent those rights may be exercised outside of the school context. *See* Cal. Educ.Code §§ 48907 and 48950.[3] Consequently, different outcomes may result when evaluating violations of students' free speech rights under federal and state law.

Nonetheless, in this case we find that the outcome under both federal and state law is the same. Threats of physical violence are not protected by the First Amendment under either federal or state law, and as a result, it does not matter to our analysis that Sarah Lovell uttered her comments while at school. To resolve the federal claim, we need not rely upon the Supreme Court cases that limit students' free speech rights; because we hold that threats such as Lovell's are not entitled to First Amendment protection in any forum, it does not matter that the statement was made by a student in the school context. Thus, our analysis focuses upon whether PUSD could punish Sarah Lovell based on her statement, without violating her First Amendment free speech rights, regardless of whether the conduct occurred on or off campus.

**B**

In general, threats are not protected by the First Amendment. *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (holding that the statement, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.," was political hyperbole and not a "true threat" given its context). Statutes punishing threats "must be interpreted with

3. California Education Code Section 48950 provides that:

 (a) School districts operating one or more high schools and private secondary schools shall not make or enforce any rule subjecting any high school pupil to disciplinary sanctions solely on the basis of conduct that is speech or other communication, that, *when engaged in*

*outside of the campus,* is protected from governmental restriction by the First Amendment to the United States Constitution or Section 2 of Article 1 of the California Constitution.... (d) Nothing in this section prohibits the imposition of discipline for harassment, threats, or intimidation, *unless constitutionally protected.* (emphasis added).

the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." *Id.* at 707, 89 S.Ct. at 1401.

We have set forth an objective test for determining whether a threat is a "true threat" and, thus, falls outside the protection of the First Amendment: "whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or .assault." *United States v. Orozco–Santillan,* 903 F.2d 1262 (9th Cir.1990). Furthermore, "[a]lleged threats should be considered in light of their entire factual context, including the surrounding events and the reaction of the listeners." *Id.* (citing *United States v. Gilbert,* 884 F.2d 454, 457 (9th Cir.1989), *cert. denied,* 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1044 (1990) and *United States v. Mitchell,* 812 F.2d 1250, 1255 (9th Cir.1987)); *accord United States v. Kelner,* 534 F.2d 1020 (2d Cir.) ("So long as the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific . . . as to convey a gravity of purpose and imminent prospect of execution, the statute may properly be applied."), *cert. denied,* 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976). In light of the violence prevalent in schools today, school officials are justified in taking very seriously student threats against faculty or other students.[4]

California courts have also considered the issue of First Amendment protection for threats. *See, e.g., In re M.S.,* 10 Cal.4th 698, 42 Cal.Rptr.2d 355, 896 P.2d 1365 (1995) (upholding the constitutionality of state hate crimes statutes that punish threats if the speaker has the apparent ability to carry out the threat and has reasonably induced fear of violence in the victim); *People v. Fisher,* 12 Cal.App.4th 1556, 15 Cal.Rptr.2d 889 (1993) (upholding a conviction under a criminal stat-ute that punishes threats, even though the defendant had no intent to carry out the threat, "as long as the circumstances are such that the threats are so unambiguous and have such immediacy that they convincingly express an intention of being carried out."). In these cases, the California courts relied on both *Orozco–Santillan* and *Kelner* to determine whether a threat is a "true threat" and therefore may be criminalized. Thus, federal law and California state law substantially agree with respect to First Amendment protection of threats.

Applying the tests set forth above, the magistrate judge found that no matter which statement Lovell made, it did not constitute a "true threat." Although the judge correctly stated the applicable law, we find that he erred when applying the law to the facts of this case in several respects. In reaching his conclusion, the judge lost sight of the fact that the ultimate inquiry is whether a reasonable person in Lovell's position would foresee that Suokko would interpret her statement as a serious expression of intent to harm or assault. Considering only Suokko's version of the facts for a moment, there is no question that any person could reasonably consider the statement "If you don't give me this schedule change, I'm going to shoot you," made by an angry teenager, to be a serious expression of intent to harm or assault. A reasonable person in these circumstances would have foreseen that Suokko would interpret that statement as a serious expression of intent to harm. This statement is unequivocal and specific enough to convey a true threat of physical violence. This is particularly true when considered against the backdrop of increasing violence among school children today.

Furthermore, when considering the surrounding factual context, the magistrate judge focused too much on the actions taken or not taken by Suokko following Lovell's

---

4. See *United States v. Lopez,* —— U.S. ——, ——, 115 S.Ct. 1624, 1659, 131 L.Ed.2d 626 (1995) (Breyer, J., dissenting), for a list of sources supporting the proposition that "the problem of guns in and around schools is widespread and extremely serious." These materials list a variety of disturbing statistics, such as "four percent of American high school students . . . carry a gun to school at least occasionally." *Id.* Furthermore, "they report that this widespread violence in schools throughout the Nation significantly interferes with the quality of education in those schools." *Id.*

outburst.[5] We believe that the judge read too much into Suokko's reaction immediately following the incident. Suokko has stated repeatedly that she felt threatened when Lovell confronted her as she did. The fact that she chose not to seek help instantly is not dispositive. She did report the conduct to Assistant Principal Wright within a few hours, before she went home that day. Exhibiting fortitude and stoicism in the interim does not vitiate the threatening nature of Lovell's conduct, or Suokko's belief that Lovell threatened her. Therefore, under Suokko's version of the facts, the PUSD did not violate Lovell's First Amendment rights.

 It is a closer question, however, whether Lovell's version of the facts would merit the same response. When they are frustrated people do utter expressions such as "I'm so frustrated I could just shoot someone." It is not clear that one should foresee that such a statement will be interpreted as a serious expression of intent to harm. Unfortunately, the magistrate found that the evidence as to which statement Lovell actually said stood in equipoise, *Lovell,* 847 F.Supp. at 783, and we cannot say that this finding of fact is clearly erroneous.[6] In general, if the evidence is evenly balanced, such that a decision on the point cannot be made one way or the other, then the party with the burden of persuasion loses. *See Director, Office of Workers' Compensation Programs v. Greenwich Collieries,* — U.S. —, —, 114 S.Ct. 2251, 2255, 129 L.Ed.2d 221 (1994); *see also Bristow v. Drake Street Inc.,* 41 F.3d 345, 353 (7th Cir.1994) ("Burdens of persuasion affect the outcomes only of cases in which the trier of fact thinks the plaintiff's and defendant's positions equiprobable."); *Texas Distributors, Inc. v. Local Union No. 100,* 598 F.2d 393, 402 (5th Cir.1979); *NLRB v. Patrick Plaza Dodge, Inc.,* 522 F.2d 804, 809 (4th Cir.1975). As the plaintiff in this case, Lovell had the ultimate burden of prov-

ing that PUSD violated her First Amendment rights. This issue turns in part upon what she said. Because she did not preponderate in her version of the facts, she has failed to meet this burden.

 Given the level of violence pervasive in public schools today, it is no wonder that Suokko felt threatened. Nonetheless, we do not mean to suggest that one need only assert that he or she felt threatened by another's conduct in order to justify overriding that person's right to free expression. While courts may consider the effect on the listener when determining whether a statement constitutes a true threat, the final result turns upon whether a reasonable person in these circumstances should have foreseen that his or her words would have this effect.

Based on the foregoing analysis, we do not agree with the magistrate judge that it makes no difference which version of Lovell's statement was actually uttered. Lovell had the burden to prove that PUSD violated her free speech rights, and she did not carry that burden. We find that her statement, as characterized by Suokko, was not entitled to First Amendment protection. Therefore, the PUSD did not violate Lovell's First Amendment right to free expression under either federal or state law when it suspended her for threatening a school guidance counselor.

### III

The magistrate judge awarded partial attorney's fees to Lovell pursuant to 42 U.S.C. § 1988. Section 1988 authorizes fee awards to the "prevailing party" in an action pursuant to 42 U.S.C. § 1983. Because we have reversed the judgment for Lovell on the merits, she can no longer be considered a prevailing party. *Turner v. McMahon,* 830 F.2d 1003, 1009 (9th Cir.1987), *cert. denied,* 488 U.S. 818, 109 S.Ct. 59, 102 L.Ed.2d 37

---

**5.** The judge based his judgment in part on the fact that Suokko did not seek immediate assistance or speak to anyone about the threat for three hours. *Lovell,* 847 F.Supp. at 785. But the judge failed to consider that Suokko was in the midst of processing student schedule changes, and a long line of students waited outside her door. She continued to meet with the waiting students, and left to report the incident

to Scott Wright at the first possible moment, which was three hours after the incident.

**6.** In this case, only the trial judge saw the witnesses testify, and he alone was in a position to assess their credibility. *Unfortunately, he made no factual findings detailing his credibility determinations.*

(1988). Accordingly, the award of attorney's fees is vacated.

## IV

We recognize that violence is prevalent in public schools today, and that teachers and administrators must take threats by students very seriously. It is for this reason that we cannot ignore the fact that Sarah Lovell has failed to prove that she did not utter the statement that directly and unambiguously threatened physical harm to her guidance counselor. Therefore, the district court's judgment is REVERSED.

NOONAN, Circuit Judge, concurring and dissenting:

I concur in the judgment of the court that Sarah Lovell has not proven her federal claim, but I do not believe the court is correct in analyzing Lovell's federal and state claims by a single "threat" analysis.

Lovell's federal claim is based on the First Amendment, which affords students in schools a right of expression limited by their educational environment and accords appropriate deference to school officials in carrying out their educational mission. *See Bethel School District No. 403 v. Fraser,* 478 U.S. 675, 682–83, 106 S.Ct. 3159, 3163–64, 92 L.Ed.2d 549 (1986). Sarah Lovell sassed her guidance counsellor. It was within the school district's discretion to find Lovell's expression inappropriate for school discourse and to discipline her for it after a fair hearing. *Id.*

Lovell's state claim, however, is based on California Education Code § 48950, which provides a high school student "the same right to exercise his or her right to free speech on campus as he or she enjoys when off campus." Cal. Educ.Code § 48950 note (b). For this claim we must consider Lovell's conduct as though it was "engaged in outside of the campus." *Id.* § 48950(a). The scope of this recently enacted statute will no doubt be narrowed in the courts of California; but this task is better left in the first instance to those courts. *See* 28 U.S.C. § 1367(c)(1). The district court could now decide not to exercise its supplemental jurisdiction.

If the district court does retain jurisdiction, what is crucial for determining whether Lovell's expression was a true threat is what Lovell uttered. The magistrate judge's findings on this issue are incomplete. Remand of the state claim is appropriate. True, the magistrate judge stated that neither party preponderated in proving what expression Lovell used; he did so on the assumption that he need not determine those words in order to find ultimately that Lovell had proven her case. *Lovell v. Poway Unified School District,* 847 F.Supp. 780, 783 (S.D.Cal.1994) ("Neither party preponderated in their evidence, nor are the exact words necessary to the Court's findings."). As that assumption was mistaken, the trial court should reconsider the state claim, with the clear understanding of what facts are dispositive. *See, e.g., Starsky v. Williams,* 512 F.2d 109, 117–18 (9th Cir.1975). Remand would also enable the district court, if it chooses to exercise its supplemental jurisdiction, to reconsider its findings solely under the state statute and the appropriate test analyzing the speech as if it occurred outside of school.