**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Marvin Clyde LINCOLN,
Defendant-Appellant.**

No. 72–1093.

United States Court of Appeals,
Sixth Circuit.

June 28, 1972.

Robert S. Brandt, Nashville, Tenn. (Court-appointed) for appellant.

Ira E. Parker, Nashville, Tenn., for appellee; Charles H. Anderson, U. S. Atty., M. D. Tennessee, on brief.

Before WEICK, PECK, and McCREE, Circuit Judges.

PER CURIAM.

This is an appeal from conviction of knowingly and willfully making a threat to take the life of the President of the United States in violation of 18 U.S.C. § 871(a). Appellant was convicted by a jury and sentenced to serve two and one-half years in prison. The only substantial issue presented is whether the District Court properly instructed the jury about the meaning of the phrase "knowingly and willfully" as used in the statute:

> Whoever knowingly and willfully deposits for conveyance in the mail . . . any threat to take the life or to inflict bodily harm upon the President of the United States . . . or knowingly and willfully otherwise makes any such threat against the President . . . shall be fined not more than $1,000 or imprisoned not more than five years, or both.

The court instructed the jury that:

By inserting the words knowingly and willfully in the statute Congress was referring to the intentional nature of the threat. The words knowingly and willfully were intended to signify that the defendant at the time of making the threat charged against him knew what he was doing and with that knowledge proceeded in violation of the law to make it. Thus, a threat is knowingly made if the maker of it comprehends the meaning of the words uttered by him and it is willfully made if in addition to comprehending the meaning of the words the maker voluntarily and intentionally utters them as the declaration of an apparent determination to carry them into execution.

Appellant contends that the statute is violated only when a threat is uttered with a willful intent to carry it out. He concedes that this contention has been rejected by every United States Court of Appeals which has considered it. We, too, reject appellant's contention, and adopt the construction of the Ninth Circuit in Roy v. United States, 416 F.2d 874, 877–878 (9th Cir. 1969):

This Court therefore construes the willfulness requirement of the statute to require only that the defendant intentionally make a statement, written or oral, in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of the President, and that the statement not be the result of mistake, duress, or coercion. The statute does not require that the defendant actually intend to carry out the threat. [Footnotes omitted.]

. . . If a threat were made in a context of levity, so that a reasonable person would interpret the words used to be mere hyperbole or jest, not intended to express a true intention to inflict bodily harm upon the President, then the words would not constitute a threat within the scope of the statute. In this context it would be apparent to a reasonable person that the individual uttering the words was not making a serious threat.

*Accord*, United States v. Patillo, 438 F.2d 13 (4th Cir. 1971); United States v. Compton, 428 F.2d 18 (2d Cir. 1970), cert. denied, 401 U.S. 1014, 91 S.Ct. 1259, 28 L.Ed.2d 551 (1971); *cf.* Watts v. United States, 394 U.S. 705, 707–708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam), reversing 131 U.S.App.D.C. 125, 402 F.2d 676 (1968).

Appellant also contends that the threat uttered in this case was made under circumstances which made it incredible, and that the evidence is insufficient to sustain the jury's conclusion that it was intended as a serious expression. The incident occurred on June 15, 1971. On that date, appellant entered the Nashville, Tennessee Field Office of the United States Secret Service and "informed" them of a bizaare conspiracy to murder the President. Subsequent investigation by agents of the Federal Bureau of Investigation revealed no other evidence of the alleged plot. However, appellant was prosecuted not for conspiracy or for his assertion that one existed, but for his statement that, even if the others in the conspiracy were not serious, he himself would go to Washington and kill the President. An agent who interviewed appellant on June 15 testified as follows:

A. Mr. Lincoln advised me that if the other five people that he was supposed to have met did not show up he would go to Washington himself and kill the President.

Q. Did you make any inquiry of him as to whether he was serious or joking about this?

A. I did make an inquiry. I asked Mr. Lincoln if he was aware of the seriousness of what he had said. That it was a federal violation to

make a threat against the President of the United States. And asking him if he was actually serious about what he was' saying. He advised me that he was serious. That he would go to Washington and wait for the best opportunity and kill the President.

. . . . . .

Q. Mr. Chipps, did he tell you why he wanted to kill the President?

A. He didn't tell me exactly why . . . . He told me that he didn't care for the President. And that while he was incarcerated in the Missouri State Prison approximately October, 1970 that he had written a letter to the President expressing desire to spend the rest of his prison time in Viet Nam serving the Military Service. He stated that after a period of time he didn't get a reply from the President and got mad because the President considered him a nobody.

Under these circumstances, the jury's conclusion was adequately supported by the evidence. Accordingly, the judgment of conviction shall be affirmed.

Affirmed.