**UNITED STATES OF AMERICA,**
Plaintiff–Appellee,

v.

**William Mark LINEBERRY,**
Defendant–Appellant.

No. 99–6425.

United States Court of Appeals,
Sixth Circuit.

March 28, 2001.

Before KRUPANSKY, BOGGS, and BATCHELDER, Circuit Judges.

PER CURIAM.

The defendant-appellant, William Mark Lineberry ("Lineberry"), has challenged the district court's disallowance of any reduction to his narcotics trafficking sentence for his claimed "acceptance of responsibility," as well as its imposition of a two-level sentencing enhancement for obstruction of justice. The defendant had pleaded guilty to count four of the indictment against him, which charged that, on August 6, 1998, he possessed with intent to distribute, and distributed, methamphetamine[1] (sometimes referred to herein as "crank").

On or about October 14, 1997, after midnight, local police units responded to a reported disturbance at Lineberry's primary residence located in Finley, Tennessee. The patrolmen encountered approximately nine persons inside that dwelling. Lineberry verbally granted the officers' request for permission to search his home. Those investigators discovered a twenty-gauge sawed-off shotgun, two smoking pipes designed for narcotics consumption, and a locked portable lockbox-type safe. Lineberry represented to the policemen that he did not own any of those items; he attributed ownership of the firearm to William Bumpus ("Bumpus"), and proprietorship of the pipes and lockbox safe to Steve Tiszai ("Tiszai"). During the search, David McNeely, Jr. ("McNeely"), abruptly seized the small safe and bolted from the house. A pursuing constable failed to ap-

1. Pursuant to the Fed.R.Crim.P. 11 plea agreement assented to by the defendant and the government, the district court dismissed the remaining three counts of the indictment against Lineberry, each of which had charged offenses involving cocaine or cocaine base.

prehend McNeely; however, he located the discarded lockbox safe lying in a turnip patch.

Subsequently, at the Dyersburg Police Department headquarters, a narcotics detection canine alerted to the safe. A consequent warrant search of its contents yielded a cache of contraband which included packages of cocaine and narcotics-related paraphernalia. Examiners lifted a latent fingerprint of Lineberry's from an object which had been concealed within the small safe. The investigators detected no print from Tiszai or McNeely inside the safe. Later, law enforcement agents secured corroboration from Tiszai and Bumpus that Lineberry in fact owned the safe.

Both Tiszai and Bumpus disclosed that Bumpus had sold the lockbox safe to the defendant (Tiszai was an eyewitness to that transaction); and both possessed personal knowledge of Lineberry's long-term narcotics distribution enterprise. Additionally, Tiszai revealed that Lineberry had confessed to him that he (Lineberry) had instructed McNeely to flee with the safe to prevent the authorities from discerning its contents. At Lineberry's sentencing hearing, McNeely testified that the defendant had asked him to "run" with the portable lockbox because something inside of it might "get him [Lineberry] into trouble." A confidential informant ("c.i."), Penny Sweatt ("Penny"), attested that she had heard Lineberry tell her husband Troy Sweatt ("Troy") (who had also acted as a c.i.) that the small safe and its contents belonged to him.

On May 4, 1998, May 8, 1998, and August 6, 1998, the authorities, via the Sweatts and/or an undercover agent, executed three controlled purchases of illegal stimulants from Lineberry at his sister's residence located in Dyersburg, Tennessee. The first two transactions involved a total of .8 grams of cocaine base. On August 6, 1998, the final controlled pur-

chase transpired. The Sweatts, while outfitted with a sound recorder, appeared at the Dyersburg home carrying $2,600 in United States currency. They had previously agreed to pay that amount to the defendant for two ounces of methamphetamine. Lineberry informed them that his narcotics supplier had not arrived with the promised two ounces of crank. However, he currently had approximately one ounce (27.5 grams) of methamphetamine in stock, which he sold to the Sweatts for $1,300. The Sweatts departed the Lineberry domicile immediately following consummation of the sale. Moments later, Lineberry telephoned them to advise that he had acquired the promised two ounces of methamphetamine from his source, which were now available for purchase. However, the Sweatts did not return to the Dyersburg house to buy any more drugs on that day.

Following the probation office's completion of its presentence investigation report ("PSR") for the defendant, Lineberry, in his April 28, 1999 amended written objections thereto, denied that he had bargained or promised to sell two ounces of crank to the Sweatts on August 6, 1998, denied that the safe and its contents were relevant to his sentencing, and objected to the weight of methamphetamine attributed against him by the PSR.

At Lineberry's sentencing hearing, Troy Sweatt testified that, following their arrests, Lineberry had angrily and menacingly denounced him as a "snitch," in language peppered with obscenity, while the two were confined in a common cell in the United States Marshal's lockup. Although the two men were alone during that conversation, Troy testified that he feared, based upon Lineberry's minacious statements, that Lineberry had disclosed Troy's informant role to fellow prisoners, which he believed had created a danger that any random inmate might attempt to kill or injure him. The encounter between Line-

berry and Troy while in custody prompted Troy's jailers to reassign him to around-the-clock protective confinement. Penny Sweatt testified that Troy had told her that Lineberry had called him a "snitch" and had threatened to "get him." Additionally, Penny had learned from her aunt and her brother that Lineberry and one of his cohorts had planned to "jump" Troy; that intelligence had originated with the mother of Lineberry's implicated confederate.

The sentencing court computed Lineberry's offense level to total 28 points,[2] and determined his criminal history category to be III,[3] which together yielded a guidelines sentencing range of 97 to 121 months of incarceration. U.S.S.G. § 5A (Sentencing Table). The trial judge imposed 109 months of penal confinement, to be followed by five years of supervised release,

plus a $100 assessment and a $12,500 fine. If the lower court had not adopted the two-level "obstruction of justice" enhancement under U.S.S.G. § 3C1.1,[4] and had further allowed the defendant a two- or three-level deduction for "acceptance of responsibility" under U.S.S.G. § 3E1.1(a) and/or (b) (see note 8 infra), Lineberry's total offense level would have tallied either 24 or 23, respectively. Consequently, his sentencing range would have been either 63 to 78 months, or 57 to 71 months, respectively. U.S.S.G. § 5A.

The government bears the burden of proving the facts supporting obstruction of justice by a preponderance of evidence. United States v. Range, 982 F.2d 196, 198 (6th Cir.1992). On review of an obstruction of justice enhancement, the appellate forum examines factual findings for clear error,[5] scrutinizes de novo the

2. The district court tabulated Lineberry's offense level by assigning him a base offense level of 26 for the conduct charged in count four (to which he had pleaded guilty), to wit, distributing, or attempting to distribute, approximately 84.2 grams of methamphetamine to the Sweatts on August 6, 1998, which consisted of the approximately one ounce (27.5 grams) which Lineberry actually sold to the Sweatts, plus the additional two ounces (56.7 grams) which Lineberry offered to sell to them later that day. See U.S.S.G. § 2D1.1(c)(7) (mandating a base offense level of 26 for involvement with at least 50 grams but less than 200 grams of methamphetamine). The court augmented the base offense level of 26 by two levels because of the defendant's efforts to impede the administration of justice. U.S.S.G. § 3C1.1. Although no "relevant conduct" by Lineberry was necessary to support the trial court's base offense level assessment, see U.S.S.G. § 1B1.3, the sentencing court considered the defendant's "relevant conduct" activities in the course of examining the government's request for an "obstruction of justice" enhancement, as well as in setting Lineberry's imprisonment duration at the midpoint of the guidelines range, as developed herein.

3. The defendant has not contested the district court's determination of his criminal history category.

4. "If (A) a defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1.

5. "A finding of fact is clearly erroneous when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citation omitted). A reviewing bench should sustain a sentencing court's factual finding if it was supported by 'some minimum indicium of reliability beyond mere allegation.' United States v. Robison, 904 F.2d 365, 371 (6th Cir.1990) (citations omitted). See also United States v. Partington, 21 F.3d 714, 717 (6th Cir.1994); U.S.S.G. § 6A1.3(a) (Policy Statement). 'The appellate courts generally do not review the district court's determinations regarding witness credibility.' United States v.

mixed law-and-fact conclusion that the facts found by the district court constituted an obstruction of justice, and construes the governing law *de novo*. *United States v. McDonald*, 165 F.3d 1032, 1034–35 (6th Cir.1999). When, as in the case *sub judice*, the defendant has properly objected to an obstruction of justice increase, the trial court should make specific factual findings which evince the defendant's willful impediment of justice. *Range*, 982 F.2d at 198.

■ The trial court found, correctly, that at least three independent facts individually justified the obstruction of justice enhancement in controversy: (1) Lineberry's threats targeting a key government informant-witness, Troy Sweatt; (2) Lineberry's enlistment of McNeely to remove, and endeavor to conceal, incriminating evidence, namely the locked small safe and its contents, during a lawful police search; and (3) Lineberry's lies to law enforcement officers, the probation office, and the court by denying his ownership of the lockbox safe and its contents.[6] The occurrence of each of those events was evidenced in the record; thus, no clear error infected the lower court's factual findings pertinent to the defendant's impediment of justice.

Those facts were legally sufficient to buttress a sentencing elevation for obstruction of justice. "[T]hreatening, intimidating, or otherwise unlawfully influencing a ... witness ..., directly or indirectly, or attempting to do so," constitutes an obstruction of justice. U.S.S.G. § 3C1.1, comment. (n.4(a)). Lineberry's statements to Troy Sweatt while in the custody of the federal marshals were, at minimum, indi-

rectly threatening and intimidating, and patently designed to dissuade the witness from further cooperation with the authorities in any manner related to the defendant's sale or offer of methamphetamine to the Sweatts, the crimes for which he was ultimately convicted and sentenced. *See United States v. Lincoln*, 462 F.2d 1368, 1369 (6th Cir.1972) (*per curiam*), wherein this circuit defined a "true threat" to constitute "a statement, written or oral, [made] in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of [the target], and that the statement not be the result of mistake, duress, or coercion ." (citation omitted); *see also United States v. Alkhabaz*, 104 F.3d 1492, 1494 (6th Cir. 1997). Lineberry's expressed or implied threats were sufficiently convincing to prompt the authorities to assign Troy to constant protective confinement. Standing alone, Lineberry's threats directed against Troy were sufficient to justify the enhancement under § 3C1.1 for impeding the operation of the criminal justice system.

Although no further scrutiny of the obstruction of justice enhancement is necessary, this reviewing court notes that the two additional rationales cited by the sentencing judge alternatively legitimated that sentencing increase. Concealing evidence material to an official investigation or judicial proceeding, or directing or pro-

---

*Gessa*, 57 F.3d 493, 496 (6th Cir.1995) (citation omitted)." *United States v. Dunlap*, 209 F.3d 472, 476 n. 8 (6th Cir.2000).

**6.** Although the sentencing court focused upon Lineberry's fraudulent denials concerning the safe, the record evidenced at least two additional relevant false denials by Lineberry to the court and/or the authorities, namely his

denial that he had threatened Troy Sweatt, and his denial that he had agreed to sell the Sweatts two ounces of methamphetamine on August 6, 1998. However, given the overall posture of this case as evolved herein, the "obstruction of justice" enhancement was appropriate even in the absence of those, or indeed *any*, misrepresentations by the defendant.

curing another person to do so, or attempting to do so, will trigger an enhancement for obstruction of justice.[7] U.S.S.G. § 3C1.1, comment. (n.4(d)). Lineberry's instructing McNeely to flee from the house with the safe during the search patently constituted an attempt to obstruct justice, even though, by the terms of the Rule 11 plea bargain, Lineberry ultimately was not convicted of any offense directly related to the contents of the small safe. *See* U.S.S.G. § 3C1.1 (explaining that impeding the investigation or prosecution of any "relevant conduct" activity, or any other "closely related offense," may trigger the obstruction of justice enhancement).

Additionally, the defendant's furnishing materially false information to a judge comprised a rationale for an obstruction of justice penalty. U.S.S.G. § 3C1.1, comment. (n.4(f)). Lineberry falsely denied, to the sentencing court, his (1) ownership of the safe and its contents, (2) engagement of McNeely to conceal evidence, (3) threats against Troy Sweatt, and (4) negotiated promise to sell the Sweatts two ounces of methamphetamine on August 6, 1998.

Accordingly, the trial judge's addition of two levels for obstruction of justice to Lineberry's offense level was justified, by at least three independent rationales.

■ Because the government sustained its burden of proving that Lineberry had obstructed justice, Lineberry did not carry his burden of proving that he had fully accepted responsibility for his crimes.[8]

---

7. Special requirements apply if the defendant had attempted to conceal or destroy evidence "contemporaneously with arrest;" in those circumstances, the evidence must reflect that the defendant's obstructive conduct "resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." U.S.S.G. § 3C1.1, comment. (n.4(d)). Even accepting *arguendo* Lineberry's argument that that requisite applied in the instant case, it has been satisfied. Lineberry's attempt to conceal evidence through McNeely materially hindered the October 14, 1997 investigation of Lineberry's drug dealing, which ultimately would have been pertinent to his sentencing for his crime of conviction (methamphetamine trafficking), because an at-the-scene officer was compelled to abandon the house search to chase after McNeely and the evidence with which he had absconded. That constable's ultimate fortuitous discovery of the discarded lockbox safe in a turnip field did not terminate the disruptive effects of McNeely's actions, undertaken at Lineberry's behest, because McNeely's charging out of the house with the small safe during the search fueled Lineberry's disingenuous claim that persons other than he owned, or had an interest in, the safe and its contents. Additionally, by executing Lineberry's directive, McNeely, a material witness who would ultimately testify during the defendant's sentencing proceeding, had successfully escaped the police dragnet, thus compelling the authorities to subsequently expend resources to hunt him down. At bottom, the mere fact that McNeely was not successful in his efforts to conceal the safe from the authorities did not ameliorate Lineberry's attempt to obstruct justice by directing McNeely to abscond with it.

8. Under U.S.S.G. § 3E1.1(a), the sentencing bench may allow a defendant a two-level decrease in his offense level "[i]f the defendant *clearly* demonstrates acceptance of responsibility for his offense." (Emphasis added). Section 3E1.1(b) permits an additional one-level adjustment if the defendant *also* had assisted the investigation or prosecution of the case against him by doing one or more of the following:

> (1) timely providing complete information to the government concerning his own involvement in the offense; or
> (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.

However, the mere entry of a guilty plea does not automatically entitle the defendant to an "acceptance of responsibility" benefit, especially if he has acted in ways inconsistent with a full and genuine acceptance of responsibility for his misdeeds. U.S.S.G. § 3E1.1, comment. (n.3).

*See United States v. Chambers,* 195 F.3d 274, 278 (6th Cir.1999); *United States v. Wolfe,* 71 F.3d 611, 616 (6th Cir.1995); *United States v. Nichols,* 979 F.2d 402, 414 (6th Cir.1992), *aff'd,* 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994); U.S.S.G. § 3E1.1, comment. (n.4). Accordingly, the district court did not commit clear error by finding that Lineberry did not accept responsibility for his transgressions, and therefore did not legally err by disallowing him any credit under § 3E1.1. *See Chambers,* 195 F.3d at 278; *United States v. Childers,* 86 F.3d 562, 563 (6th Cir.1996); U.S .S.G. § 3E1.1, comment. (n.5).

The defendant's judgment of conviction and sentence is AFFIRMED.